## CLARENCE C. WHITING *vs*. WM. H. CRAWFORD CO.

*Privity of Contract—Agency—Right of Party Professing to Act as Agent to Recover on Contract Against Party Knowing Him to be the Principal.*

When a person makes a contract, professing therein to act as agent for a designated principal, but in reality exceeding his authority and being himself the real principal, and the other party to the contract knows who the real principal is and accepts performance of the contract, then this latter party is liable in an action by the former on the contract.

Plaintiff, a merchandise broker, was requested by defendant to obtain a contract for a certain quantity of soda ash. He communicated with a manufacturer who refused to sell to defendant, but offered to sell to plaintiff directly, and this offer was accepted. In plaintiff's contract with defendant, he represented himself as selling for the manufacturer, but defendant afterwards had knowledge of the facts and that plaintiff was the real vendor, and defendant announced that it would hold plaintiff liable under the agreement. In an action to recover the contract price of goods subsequently delivered to the defendant by the plaintiff, who had paid the manufacturer for them. *Held*, that the defendant cannot set up as a defense that its contract was with the manufacturer, but is liable to the plaintiff.

Appeal from a judgment of the Superior Court of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*George R. Gaither,* for the appellant.

It will be noted that this is not a suit brought by the plaintiff for the breach of this particular contract, on account of the refusal of the defendant to accept any of the goods sold under it. It is simply an action upon the common counts in *assumpsit* for the two cars of soda ash bargained, sold and delivered by the plaintiff to the defendant. The proof of the contract in dispute was, therefore, only necessary in order to show the terms upon which the delivery was made, out of which the right of action for the goods received by the defendant arose. The plaintiff will urge his right to maintain suit upon two general propositions.

*First.* The plaintiff held a *del credere* commission from the Michigan Alkali Company, through its general agents, Messrs. E. Hill's Son & Co., to make the contract offered in evidence by the plaintiff, and in pursuance of such commission made the contract of March 28th, 1899, with the defendant company. *Lewis* v. *Brehme,* 33 Md. 412; *Miller* v. *Lea,* 35 Md. 404; *Wilson* v. *Sands,* 36 Md. 38.

*Second.* Assuming, however, that, under the facts of this case, the appellant had no technical right to make the contract in the name of the Michigan Alkali Company, but should have made the same in his own name, yet he is entitled to recover in this case, because, prior to the delivery and acceptance of the goods, for which this suit is brought, the defendant company had full knowledge of the plaintiff's position under this contract and accepted the goods with such knowledge. The plaintiff under this phase simply occupies the position of an agent contracting beyond the scope of his authority, and making a contract in the name of his principal without his sanction. *He is in no sense a stranger to the agree-*

*ment.* By the very terms of the contract of sale it begins : "I have this day sold you for account of the Michigan Alkali Company," etc., and the contract is signed in the name of the plaintiff, "C. C. Whiting."

On November 18th, 1899, the defendant wrote to Edward Hill's Son & Co., enclosing a copy of this very contract, made by the plaintiff with them, and asked if it was correct. Two days afterwards they received a letter from these parties, expressly denying the right of anyone to make such a contract for them with the defendant. Thereupon the defendant immediately informed the plaintiff of the receipt of such letter from the general agents of the Michigan Alkali Company, and demanded of him that if he had no authority to make this contract that he should be responsible for compliance with the same. Immediately after receiving this letter the plaintiff called upon the defendant and showed its president the letter of March 24th, 1899, stating to the defendant that it was on this authority and in this manner that the contract had been made with it. The defendant, therefore, on November 21st, 1899, *had full knowledge of all the circumstances under which this contract had been made.* It knew fully that Edward Hill's Son & Co., had absolutely refused to sell directly to it, but had authorized the plaintiff to make the contract with it, provided that he would be personally responsible for the money due for the same. It therefore knew on that date, that it was either contracting with the plaintiff as *del credere* agent, or in his capacity as principal under his dual contract with the Michigan Alkali Company. With this knowledge the defendant accepted the first car delivered to it under the contract by Mr. Whiting on November 22nd, 1899, as shown by its letter and paid for the same ten days afterwards, in accordance with the terms of the agreement. The defendant also ordered on November 29th, 1899, six cars additional on this contract, and on December 29th, 1899, six cars more. The testimony also shows that during the period between these times it insisted upon his compliance with the contract, had all its communications directly with him, notified him to furnish soda

ash "*on account of our contract with you of March 28th, 1899,*" and finally, on December 28th, 1899, accepted the delivery of the two cars which were furnished by the plaintiff to it under the order of November 6th, 1899, and accepted the same from him, for which cars the present suit has been brought.

The decisions as to the right of an agent to sue under a contract, made in the name of an avowed principal, when the agent is in fact the contracting party, are not numerous, but they uniformly establish his right to maintain a suit, *where the knowledge of his true position is communicated to the other party prior to the completion of the contract. Raynor* v. *Grote,* 15 M. & W. 365; *Bickerton* v. *Burrell,* 5 M. & S. 383, 387; *Story on Agency,* sec. 406; 1 *Am. & Eng. Ency. Law,* 1165; *Schmalz* v. *Avery,* 20 L. J. Q. B. 228; *Hyman* v. *Ijams,* 56 Md. 470.

. *Woodyatt on Agency,* a very recent authority, page 106, says : "An agent is exclusively entitled and liable upon a contract who, though describing himself as an agent, but without naming a principal, is in reality himself a principal, *and it seems that even though the professing agent names a principal, he will still be exclusively entitled to sue and be liable, if the other party, though knowing who the real principal is, nevertheless partly performs or accepts part performance of the contract.*"

There are numerous cases in which third parties, *strangers to the contract,* are allowed to bring a suit in their own name, when the defendant has had notice of the assignment of the contract and its performance by the new party, *and has assented to the same.* These cases are certainly analogous to the case at bar, for if the circumstances are sufficient to allow an entire stranger to a contract to bring suit on the same, *a fortiori* must such right accrue to an agent who simply exceeded his authority in making the contract. *Hand* v. *Evans Marble Co.,* 88 Md. 226; *Eastern Ad. Co.* v. *McGaw,* 89 Md. 88.

In *Mudge* v. *Oliver,* 1 Allen, 74, the defendant purchased goods at a shop which had been occupied by a person who owed him, under the supposition that he was dealing with his debtor. The defendant did not know of the change of owner-

ship until after he had purchased the goods in controversy and sent them from the shop, but he was informed of it before he had left the shop himself. The Court said: " The fact that the defendant was, when making the purchase, ignorant of the transfer of the same by the former owner to the plaintiff, even if it might have furnished a justification for returning the goods and rescinding the contract, had he chosen to do so, upon that fact being made known to him, cannot now avail him as a defense. *Having been fully informed of the transfer, and on whose account the goods were sold to him, before he left the shop on the occasion of making the purchase, although after the delivery of the goods, the defendant, by retaining the goods after he was thus informed as to his vendor, must be held to have recognized the plaintiff as his vendor and be held to make payment to him therefor."*

In *Orcutt* v. *Nelson*, 1 Gray, 536, 542, the Court says: " Independently of those facts, it is the case of a country merchant sending an order for goods to a person supposed to be in business ; but in consequence of a change, the order is executed by another person. Upon this alone the defendant would not have been bound, because he had made no proposal to the plaintiff, and he had a right to decide for himself with whom he would deal. *But on being notified of this change, he assents to it and ratifies it ; such ratification relates to the original order, and gives it the same effect as if originally addressed to him."* See also *Mitchell* v. *Lapage*, Holt, N. P. 253, where the broker made a mistake in the contract in describing the principals for whom he had acted, but the defendant had notice of the names of the real principles at the time of the arrival of the goods and afterwards treated the contract as subsisting.

*D. K. Este Fisher*, for the appellee, submitted the cause on his brief.

The question presented is whether one occupying the character of agent in a transaction can, when a situation arises, in consequence of his having assumed that relation, in which it will be to his interest to do so, throw off the character of agent

and sue as principal in a contract in which he represented him-
self to be acting in the interest and for the account of another
whom he represented to be the contracting party, or, though
*agent*, sue in his own name for the price of the goods because
he paid the apparent vendor for them.    If he can do so, then
merchants must entirely reform their methods of doing busi-
ness and making contracts.

That the plaintiff represented in the inception that he, *as*
*agent*, was making this contract on behalf of the Michigan
Alkali Company, and in its name as *principal* with the appellee
as the other contracting party, cannot admit of any doubt.
From the beginning to the end of this whole transaction the
appellant conducted himself as the agent of the Michigan Al-
kali Company or Edward Hill's Son & Co.; its general agents,
and not only inferentially, but positively and directly denied
that he was a party to the contract or liable upon it.    Cer-
tainly his present claim does not come well recommended to
a Court of justice.

It is clear, therefore, that the appellant is suing *on a con-*
*tract* to which he was not a party.    It is a general principle
well recognized that to enable one to sue another in an action
of contract for money alleged to be due, a contract *between the*
*plaintiff and defendant* must be shown.    *Boston Ice Co.* v.
*Potter*, 123 Mass. 128.

This principle has frequently been applied in equity where
solicitors have sought allowances of fees out of funds in Court
belonging partly to their own clients and partly to others
whom they did not represent, but who have benefited by the
solicitors' services, and it has uniformly been held that they
could not be recovered for want of privity of contract.    *B. &*
*O. R. R. Co.* v. *Brown*, 79 Md. 446–7; *McGraw* v. *Canton*, 74
Md. 559.    And the same principle was applied in the late
cases of *Carroll* v. *Benedictine Society*, 88 Md. 318, and *Hand*
v. *Evans Marble Co.*, 88 Md. 227.

The same rule is stated as a thoroughly settled one in *Dicey*
*on Parties to Actions:* " Rule 19. A person who contracts in
reality for himself, but apparently as agent for another person,

whose name he gives, cannot sue on the contract as principal." The author then, after citing a number of cases supporting the above rule, cites two English cases in which it was held that the party who appeared in the contract as agent could sue because the other party knew him to be in reality principal in the contract, though described as agent ; and concludes the chapter, thus : " In spite of some expression used by the Judges in deciding the two foregoing cases, there is, it is submitted, no case showing that a person who has entered into a contract for a named principal, can afterwards sue on that contract in his own name, on showing himself to be the principal."

The reason for allowing an agent to sue in his own name is because the contract is made *in his name* and he has appeared as *principal* in the transaction and has been dealt with as such by the other party and has a beneficial interest in the contract. But in the case at bar the appellant did not contract in his own name as principal, nor did he in the course of the performance of the supposed contract act as such. He appeared as an agent of a disclosed principal in whose name the fictitious contract was made. But even if the appellant had appeared as the vendor in the contract, he could not maintain the action ; because where an agent can sue—" He, of course, sues and recovers as trustee for his principal." *U. S. Tel. Co.* v. *Gildersleeve,* 29 Md. 246. But here the proof shows that the whole thing was a fiction. *There was no principal, there was no contract ; there could be no agency.*

What justification could there be in a jury finding that the appellee *knew* the appellant was the real contracting party, when he himself, in writing, expressly denied to the appellee that he was responsible on the contract, in other words, denied that he was the principal in the transaction ? Certainly a suitor ought to be bound by his own proof. So far from there being any circumstances from which the jury could legitimately find that the appellee knew the appellant was the real principal, all the circumstances denied it and went to show that the appellee did not know it.

But even if all this were not conclusive, the appellant's au-

thorities do not say that the appellant could recover on the
contract; but only that the receipt of the goods would raise
an *implied* contract if there was *full knowledge*. Here, how-
ever, the appellant sues upon the written contract, as his ac-
count shows, and, of course, he could not recover on it. He
made the written contract his bill of particulars.

BOYD, J., delivered the opinion of the Court.

The appellant sued the appellee for the price of two car-
loads of the Michigan Alkali Company soda ash, and at the
conclusion of the plaintiff's testimony the Court below in-
structed the jury that the plaintiff had offered no evidence
legally sufficient to show any contract, either express or im-
plied, between the plaintiff and the defendant or to show any
contract upon which the plaintiff can maintain the suit in his
own name against the defendant. The jury accordingly ren-
dered a verdict for the defendant and the action of the Court
in giving that instruction is the only question presented to us
for review. The appellant, who is a general merchandise
broker in Baltimore, was requested by the appellee to obtain
a contract for the sale of from three to six carloads a month
of light soda ash for a period of twelve months, beginning in
July, 1899, for which it was willing to pay seventy cents per
hundred pounds. He communicated with Edward Hill's Son
& Co., the general agents of the Michigan Alkali Company,
which was a large manufacturer of soda ash. On March 24th,
1899, they wrote to the appellant that they would not have
the William H. Crawford & Company on their books or have
anything to do with them whatever, but added, "We will,
however, make a contract with you for say three to six cars a
month, beginning in July next," and after stating prices, etc.,
said, "We will allow you ½ per cent brokerage on this price.
You will therefore see by figuring this out that our offer to
you is really ½ per cent better than if we sold to you at
67½ cents delivered and allow one per cent brokerage; you
can bill Crawford 67½ cents delivered for your account."
The offer was accepted by the appellant who, on March 28th,

1899, wrote to the appellee stating, "I have this day sold you for account of the Michigan Alkali Co., Wyandotte, Michigan," and giving in substance the same terms of contract as were included in the letter from the general agents to the appellant, including "terms cash in ten days, less one per cent." That was accepted by the appellee. Nothing further was done and no order given by the defendant until the latter part of September, when it ordered one car of soda ash which was shipped by the Michigan Alkali Company and delivered by the appellant to the appellee in November, 1899, and was paid for by it to the appellant. On November 6th, the appellee gave the appellant an order for six carloads to be shipped by the 8th of December. They were shipped in December and the appellant delivered the first two to the appellee, which it accepted and this suit was brought to recover the price of those two carloads, after demand had been made and refused. On November 18th the appellee wrote to the agents of the Michigan Company, referring to the contract and the order of November 6th, and stating that they had been informed by the appellant that the delivery had been refused. The general agents replied, "We beg to inform you that there is no contract between you and the Michigan Alkali Co., and you have not their accepted contract or ours, who are their agents, and nobody has had authority to sell you goods for account of the Michigan Alkali Co." The plaintiff testified that before the two cars were delivered he showed the letter of March 24th, 1899, to the president of the appellee and that he had paid the general agents for the two carloads. The theory of the defense was that the appellee had made the contract with the Michigan Company through the appellant and therefore they owed him nothing and he could not recover.

Some of the letters offered in evidence indicate that both parties to this proceeding assumed positions towards each other contrary to what they now respectively contend for. On November 27th, 1899, the appellee wrote to the appellant, "We herewith give you notice that we wish (6) six cars of the 58 per cent light Soda Ash delivered in January, 1900, *on*

*account of our contract with you of March 28th, 1899,"* and again on December 1st, it wrote to him *"we expect you to carry out your obligations under our existing contract with you."* Several other letters are to the same effect and on December 14th, the appellant wrote one to the appellee which is as follows: "Answering your favor of the 13th instant, I can only state that when as your broker, I bought for you the contract for the Michigan Alkali Co., for soda ash, I assumed no responsibility for their acts. Your orders have been promptly forwarded to Messrs. Edward Hill's Son & Co., and will no doubt be attended to in conformity with the terms of the contract, which I made for you." If the latter letter was the only evidence of the relations between the appellant and the appellee, it might well be contended that there was no contract between them, but the letters of the appellee are to the effect that it looked to the appellant to carry out the contract. On November 21st, 1899, which was a month or more before it received the two cars involved in this controversy, and indeed before it received the one ordered in September, the appellee had received the letter from Edward Hill's Son & Co., which is above set out, and on that date wrote to the appellant quoting that letter and concluded by saying "If the above statement is correct, we will, of course, have to hold you responsible for compliance with the existing contract." The appellant testified that upon its receipt he showed the letter of March 24th, 1899, from Edward Hill's Son & Co. to the president of the defendant company, and had not told him of it before because "it was a disagreeable thing to tell him what Edward Hill's Son & Co. had said about him." The freight bills for the two cars, which were paid by the appellee, were made out against the appellant.

As the case is presented by the record there was no contract between the appellee and the Alkali Company, as the latter had positively refused to sell to it. The fact that the appellant wrote on March 28th, 1899, that "I have this day sold you for account of the Michigan Alkali Co.," etc., could in no wise bind that company unless he had authority to do

so. When the appellee communicated with them Edward Hill's Son & Co. promptly informed it that no one had been authorized to make the contract; and then the appellant showed the president the letter of March 24th, 1899, which not only stated that they would not have anything to do with the appellee, but that they would make the contract with the appellant and he could deliver to the appellee for his own account. That was not until after the letter of November 21st, 1899, was received by the appellee from the general agents, but from that time they could not have misunderstood the position of the Alkali Company. What then were the relations between the appellant and the appellee? The appellant in his later correspondence took the position that he had acted for the appellee, and was not responsible to it for defaults of the Alkali Company. In his letter of December 13th, he spoke of his understanding "of the contract made for you with the Michigan Alkali Company" and in that of December 14th, he said "I can only state that when as your broker I bought for you the contract from the Michigan Alkali Co. for soda ash, I assumed no responsibility for their acts." The appellee repeated in several of its letters that it would hold him responsible. If, as the testimony tends to show, the appellant did undertake to sell as agent of the Alkali Company to the appellee, knowing he had no authority to do so, he was responsible to it for such damages as it sustained. When the appellee became aware that the Alkali Company was not the principal, it had the right to sue the appellant. It not only notified him that he would be held responsible, but with full knowledge of the fact that the Alkali Company would not deal with it, it received the two carloads in controversy from him. Upon what principle can it deny liability for them? Is it to be said that when an agent has exceeded his authority in representing his named principal, that the other contracting party can demand of him *personally* a compliance with the terms of the contract and then refuse to pay for the goods delivered, although he knew that the supposed agent was really acting for himself? There would seem to be but one

answer to that question under all principles of justice and fair dealing. Yet that is precisely the inquiry which this record presents, for there was evidence of these facts legally sufficient to be submitted to the jury. The appellee seems to rely on the fact that the original contract was made by the appellant as agent for the Alkali Company, and hence its contract was with that company, and not with the appellant, but it overlooks the effect of its subsequent dealing with him after it had knowledge that he had no authority to bind the Alkali Company. It could have declined to accept the two carloads from him, but it did not pursue that course, and now after accepting them with knowledge that it had no contract with the Alkali Company, it seeks to avoid payment to the appellant on the ground that he had made the contract for that company.

If the relation of principal and agent had existed between the appellant and the Alkali Company and the former had agreed to be responsible to the latter for the goods, as he in fact did, it might well have been contended by the appellant that he could have sued in his own name on the ground that there was a *del credere* agency. For it is well-settled that one who takes goods under a *del credere* commission can, in the absence of active intervention by the real owner, collect the amount due from the purchaser. *Miller & Co.* v. *Lea & Co.,* 35 Md. 396. And an agent can sue when he has some beneficial interest in the contract, or special property in the goods, as for his commissions, for example, although he contracted for an avowed principal. 1 *Poe*, section 312. In this case the facts show that there was no agency, as the Alkali Company had refused to be a party to the contract with the appellee, and hence the above principles cannot apply and therefore the appellant cannot sue, *as agent.* But when the purchaser ascertains that the supposed agent was not such in reality and demands of him a compliance with the terms of the contract, and the agent buys and pays for the identical goods that the purchaser was to get, and delivers them to him, we can see no reason why the one who originally represented himself to be

an agent cannot recover for the goods thus received. The law does not forfeit his right to the price of the goods as a penalty for his misrepresentation. The purchaser gets what he originally contracted for and the only difference is that he gets the goods directly from the supposed agent instead of the principal named. It is true that he has the right to determine for himself with whom he will contract, and as was said in *Hand* v. *Evans Marble Company*, 88 Md. 226, " the general rule has long been established that ' one who is not a party to a contract cannot be included in the rights and liabilities which the contract creates, so as to enable him to sue or be sued upon it,' " but that rule does not apply to the facts of this case. After the appellee knew he had no contract with the Alkali Company it wrote to the appellant on December 13th, 1899, insisting on delivery of six cars in the month of December, and said " Our contract calls for such delivery *and we expect you to live up to it.*" And these two cars were a part of the six referred to. And on December, 29th, which was the day after the appellant rendered its bill to the appellee for the two cars the appellee wrote to him " we herewith give you notice that we wish (6) six cars of the 85 per cent light soda ash delivered in February, 1900, *on account of our contract with you of March 28th, 1899.*" It certainly knew it was to pay somebody for them, and, as it knew it was not to pay the Alkali Company the only other person it could pay was the appellant and it treated him as a principal.

What was said in the case of *Rayner* v. *Grote*, 15 M & W. 359, is peculiarly applicable to the one before us, although that was a suit on an executory contract. The plaintiff had made a contract in writing by which he appeared to be the agent of a party named in the contract, but was in reality the principal himself. A part of the goods, which was also soda ash, had been delivered and accepted and the suit was for the refusal to accept the balance. ALDERSON, B., said "there was evidence given at the trial, tending strongly to show, that when the first parcel of the goods was delivered to and accepted by the defendants, the name of the plaintiff as the principal was

then fully known to the defendants; and we think that it was then properly left to the jury to infer from the evidence, that the defendants, with the full knowledge of the facts, had received that portion of the goods, and that all parties then treated the contract as one made with the plaintiff as the principal in the transaction." After referring to cases of executory contracts wholly uuperformed, or partly performed without the knowledge of who was the real principal, he said, "But the facts of this case raise a totally different question, as the jury must be taken to have found, under the learned Judge's direction, that this contract had been in part perfomed, and that part performance accepted by the defendants with full knowledge that the plaintiff was not the agent, but the real principal. If so, we think the plaintiff may, after that, very properly say that they cannot refuse to complete that contract, by receiving the remainder of the goods, and paying the stipulated price for them." See also *Bickerton* v. *Burrell*, 5 Maule and Selwyn, 383; *Schmalz* v. *Avery*, 20 L. J. Q. B. 228. In *Woodyatt on Agency*, 106, it is said "it seems that even though the professing agent names a principal, he will still be exclusively entitled to sue and be liable, if the other party, though knowing who the real principal is, nevertheless partly performs or accepts part performance of the contract."

In this case there was ample evidence to justify the submission of the question to the jury as to whether the defendant had accepted the goods sued for with full knowledge that the plaintiff was the real principal, and if it so found that the plaintiff was entitled to sue. The letter of the appellant of December 14th, 1899, so much relied on by the appellee, was only a part of the evidence to be submitted, and cannot of itself preclude the appellant from suing. The judgment must be reversed.

> *Judgment reversed and new trial awarded the appellee to pay the costs.*

(Decided June 12th, 1901.)