**KELITE CORPORATION**

v.

**KHEM CHEMICALS, Inc., et al.**

No. 55 C 2273.

United States District Court
N. D. Illinois E. D.
Jan. 10, 1958.

Carlson, Pitzner, Hubbard & Wolfe and C. Frederick Leydig, Jr. and John L. Parker, Chicago, Ill., for plaintiff.

Johnson, Colmar, O'Meara & Brow and James J. O'Meara, Chicago, Ill., for defendants.

KNOCH, District Judge.

This matter came on to be heard on objections of defendants to the report of the Special Master filed herein on the 18th day of September, 1957.

The Court has had the benefit of argument of counsel on briefs, has studied the entire record and the authorities to which counsel refer, and is fully advised in the premises.

It is the considered conclusion of the Court that objections to the Special Master's findings of fact numbered 33, 36, 37, 38, 39, 41, 42, 43 and 45; and to conclusions of law numbered 2, 3, 4, 6, 7, 8, 10, 14, and 15; are without merit and they are hereby overruled. In support of their objection (numbered 10) to the report in its entirety, defendants cite two clerical errors in the report. These are obvious and unlikely to mislead any careful reader. As the Court finds these to be mere harmless errors, objection numbered 10 is hereby overruled, in so far as it calls for striking the entire report, and is hereby sustained, in so far as it corrects clerical error.

This report is in all other respects confirmed.

The following are the Findings of Fact and Conclusions of Law made by the Special Master and confirmed by this Court:

### Findings of Fact.

From all of the pleadings, the weighing of the testimony of the witnesses who appeared, the evidence, arguments and briefs of the parties, the Special Master makes the following Findings of Fact:

## I. Jurisdiction.

1. Plaintiff Kelite Corporation (hereinafter called Kelite of California), is a California Corporation, and has been engaged since 1937 in the business of manufacturing and selling proprietary chemical compositions useful in industrial cleaning and metals finishing application.

2. The defendant Khem Chemicals, Inc. is an Illinois corporation organized and existing under and by virtue of the laws of the State of Illinois with principal offices in the City of Chicago, Illinois.

3. The defendants Steven Karas, Edward F. Karas, Terrell W. Fondren, Harlan S. Walkup, Ralph M. Johnson, Jr. and Lawrence S. Dwyer are residents of the State of Illinois and all except Harlan S. Walkup reside in Cook County of said state.

4. There is a diversity of citizenship between the plaintiff and the defendants and the matter in controversy is in excess of $3,000.

5. This court has jurisdiction of the subject matter and the defendants Steven Karas, Edward F. Karas, Terrell W. Fondren, Harlan S. Walkup, Ralph M. Johnson, Jr. and Lawrence S. Dwyer, and the plaintiff has submitted to the jurisdiction of this court.

6. Arthur R. Jackson, named as a defendant herein, has not been served with process and therefore this court does not have jurisdiction over the person of Arthur R. Jackson.

## II. The Parties.

7. The defendant Khem Chemicals, Inc. was incorporated on the 10th day of May 1954 at the instance of the defendants Steven Karas, Edward F. Karas and one William W. Hook and for the purpose as stated in the Articles of Incorporation of said corporation as follows:

"The development, manufacture and sale of proprietary industrial chemicals for the purpose of water treatment, cleaning, rust and corrosion prevention, and any aspects or operations relative to these fields."

8. The defendants Steven Karas, Terrell W. Fondren, Harlan S. Walkup, Ralph M. Johnson, Jr. and Lawrence S. Dwyer are former employees of the plaintiff's predecessor and are now employees of the defendant Khem Chemicals, Inc., which corporation has since September of 1954 been engaged in the manufacture and sale of industrial chemical products for sale to the Industrial Cleaner and Metal Finishing industry and in view thereof the defendants are engaged in competition with the plaintiff.

## III. Trade Secrets and Customer Lists.

9. In 1939 Kelite of California entered into an agreement with the L. J. White Company of Chicago (hereinafter called White) under which the Chicago company was to acquire the right to use the formulae of Kelite of California's chemical compositions and to sell products made therefrom under the Kelite name in the mid-western portion of the United States.

10. Under the terms of that agreement and the later revisions thereof made in 1942 and 1945, the Kelite of California formulae and manufacturing instructions were made available to White in return for payment of a fixed royalty payable to the Kelite Company based upon the Kelite products sold by it.

11. The terms of the original agreement and each of the revisions provided that the formulae and the manufacturing instructions were to be handled by White in "strict confidence" and that the formulae were to be maintained in code.

12. The sole consideration for the payment of royalties by White to Kelite of California was the right to use the formulae and to market products bearing the Kelite name. At the time the first agreement was entered into in 1939, Kelite had been in existence approximately only two years making somewhat questionable the value of the Kelite name in the mid-west, some two thousand miles from the place the name was originated such a short time previously.

13. In 1942 by agreement White changed its name to Kelite Products, Inc. (hereinafter called Kelite of Chicago).

14. Louie E. Sorensen who was the founder of Kelite of California has been its president throughout its history.

15. William G. Nuelsen was president of the L. J. White Company and later president of Kelite of Illinois when the name was changed. Was president of Kelite of Illinois until May of 1955 when his company merged with Kelite of California. He is presently a director of Kelite of California.

16. Under the terms of the agreement existing between them, Kelite of Illinois paid to Kelite of California during the period of 1939 to 1955 a total royalty for the use of the formulae and Kelite name, an amount in excess of $608,000.

17. The formulae of the Kelite chemical compositions were developed by it as a result of a substantial expenditure of time and money and are of proprietary value. Many millions of dollars have been paid by its customers for such products over the twenty years of its business.

18. Each of the individual defendants in this action except Edward Karas who is the brother of Steven Karas, the president of the defendant corporation, Khem Chemicals Inc., were at one time employed by Kelite of Illinois. Edward Karas was never employed by Kelite of Illinois or Kelite of California. At the time each of the defendants who were former Kelite employees, left Kelite, he occupied the following position:

| Defendant | Position | Term of Kelite Service |
|---|---|---|
| Steven Karas | Plant Manager | 9/10/45 – 11/21/52 |
| Terrell W. Fondren | Chief Field Chemist | 9/20/50 – 9/11/54 |
| Harlan S. Walkup | Sales Supervisor | 5/ 8/44 – 8/13/54 |
| Lawrence S. Dwyer | Sales Supervisor | 1/ 6/50 – 10/15/54 |
| Ralph M. Johnson | Sales Engineer | 11/26/51 – 3/24/55 |

19. The positions held by the individual defendants at Kelite placed them in fiduciary positions and positions of trust in which they were under an obligation to have maintained the secret, proprietary information of their employer in a confidential manner.

20. Defendants Steven Karas and Fondren while employed at Kelite in the capacities of Plant Manager and Chief Field Chemist respectively, had full access to the formulae of Kelite's chemical compositions and the manufacturing techniques applicable to their production.

21. The formulae of the chemical compositions of Kelite of California were coded from the start of the business. When those formulae were furnished to the White company under the terms of the 1939 agreement and at all times thereafter, they were maintained in code at Kelite of Illinois.

22. Both defendants Steven Karas and Fondren knew the formulae were coded and used the same in code at all times throughout their employment at Kelite.

23. The raw material in the plant which was used to prepare compositions therefrom was labeled in code rather than by chemical name.

24. Correspondence concerning the formulae whether it was inter-plant, i. e., between Chicago and Los Angeles or intra-plant at Chicago, at all times employed the coded designations for the components. In addition the code was used in oral conversations rather than using the proper chemical name.

25. Defendants Terrell W. Fondren and Steven Karas knew that Kelite considered some of its formulae highly secret.

26. Defendant Steven Karas was instrumental in incorporating the defendant Khem Chemicals, Inc., in May of 1954 and has been the president of that company since that date.

27. The defendants Steven Karas, Terrell W. Fondren, Harlan S. Walkup, Ralph M. Johnson and Lawrence S. Dwyer signed documents, similar in substance, identified as PX 57 to 61 inclusive. Although such documents were in three separate forms, all provided *inter alia* "In consideration of your (Kelite's) agreement to employ or continue to employ me (it being understood that such employment may be changed from time to time, or may be terminated at your will), I agree as follows: (i) That I will not directly or indirectly disclose or use to your detriment, either during or after the period of my employment, any information or data of yourself, whether or not obtained or developed by me." Although there is no evidence that these written agreements were accepted in writing by Kelite, except in the case of defendant Steven Karas, all five of the signing defendants proceeded to work for Kelite.

28. On August 13, 1954, defendant Steven Karas went to Minneapolis, Minnesota where defendant Walkup was employed as Kelite's Sales Supervisor and asked him to leave Kelite to head up defendant Khem's sales organization. Walkup agreed and gave notice that day to Kelite.

29. Walkup resigned as Sales Supervisor from Kelite on August 13, 1954 to sell chemical compositions for Khem and not for the purpose of selling the "gadget", as he characterized it.

30. Walkup knew about Khem when Karas approached him on August 13, 1954, having early in the month of July agreed to become an investor in Khem.

31. Defendant Fondren, while Chief Field Chemist of Kelite, also agreed in early July of 1954 to invest money in Khem.

32. There is no evidence in the record that any experiments were conducted on the so-called "gadget" or that such a device was even partially constructed. The defendant Khem was incorporated by defendant Steven Karas and others for the purpose of selling chemical compositions of the type here in issue and pursuant to the purposes set out in its Articles of Incorporation and not to sell the "gadget".

33. The formulae of the twenty-two Khem products designated (b) to (w) in paragraph 40 of the Amended Complaint have been copied from the twenty-two formulae of the respective Kelite products set out opposite those Khem products in said paragraph 40, or are close enough to said Kelite formulae in each instance to rebut the contention of coincidence or independent discovery by Khem.

34. Each of the Kelite formulae in issue has been established to have been in existence in the formula books of plaintiff and available to defendants Fondren and Steven Karas during all or part of their term of employment at Kelite.

35. The Kelite formulae in issue were disclosed to defendants Steven Karas and Fondren under conditions of trust and confidence while said defendants were employed by plaintiff.

36. Information regarding the names of the Kelite customers, the specific knowledge of what their problems were and the Kelite products which had been sold to them were trade secrets of value to the plaintiff. Such information was well known to each of the former Kelite salesmen for the Kelite territory which they covered. This information was maintained confidential by Kelite.

37. Whether defendants Johnson, Dwyer and Walkup, on leaving Kelite took with them written lists of the Kelite customers along with other vital information concerning the products they bought is not clearly shown in the record. Each of those defendants admitted that he remembered much of such information. The evidence contains testimony that certain of these defendants went to former Kelite customers for the purpose of offering a Khem product of the same type as the Kelite product which they had previously sold to that customer.

38. Fondren's experience, qualifications and the time at his disposal were insufficient to enable him to experiment, do chemical research and develop the 22 formulae within the period of eleven months at Khem in which he claimed he had done so. The evidence shows that Fondren was employed by Kelite as a field chemist to explain and instruct salesmen, and to solve problems of customers. While at Khem he was obliged to keep the books and records of Khem and spend much time outside Khem's office. Furthermore, the laboratory equipment and facilities at Khem during these eleven months were wholly inadequate to permit the research and tests necessary to produce the formulae at issue.

39. The finding of fact is hereby made that neither Terrell W. Fondren nor any other defendant nor any representative of Khem, developed and produced the 22 formulae at issue. It is likewise a finding that all such 22 formulae and Kelite's customer lists were trade secrets of Kelite in fact as well as in law and were so guarded and kept by Kelite, and that the use of these formulae and the sale of the products composed from them were in violation of the written agreements described in paragraph 27 above and contrary to the fiduciary obligation and duty of the several defendants as trusted employees of Kelite.

40. Kelite's formulae for its products MD–1 and M–2 took a total of more than two years of research and development by one full time, highly competent chemist.

41. The written employment contracts signed by each of the defendants who were former Kelite employees are not in restraint of trade or lacking in mutuality. They applied to such trade secrets or information as each signing employee of Kelite obtained while acting as such employee.

42. The business of defendant Khem is based in large measure upon the sale of products made from Kelite's secret formulae.

43. The identity of Kelite's customers and the knowledge of chemical compositions they purchased are trade secrets.

### III. Conspiracy.

44. Much testimony and argument and a substantial portion of the briefs filed have been directed toward the allegations that there was a con-

spiracy by certain of the defendants to do the acts complained of by Kelite. After considering all of the evidence and the authorities cited by both sides, it does not appear that there was a concerted, pre-arranged unlawful plan to which the defendants directed their efforts against Kelite as alleged in the complaint and the finding is hereby made that Kelite has not proven the plan, existence and consummation of such a conspiracy by the defendants, as charged in the complaint herein, and that therefore no such conspiracy by the defendants, as alleged, has been proven by Kelite.

### IV. The Patent.

45. The formulae of Khem product "803" which is the 23rd formulation at issue, has not remained the same throughout the period Khem has been in business. The evidence herein that "Khem 803", as a chemical composition, is included within Claim 1 of United States Patent No. 2,381,124, is clear and uncontroverted as to the authentic sample of said "Khem 803" offered in evidence. It is hereby found as a fact that Khem has infringed Claim 1 of United States Patent No. 2,381,124 by the manufacture and sale of its product Khem 803.

46. There is no evidence to justify any finding against Edward Karas and no service has been had on Arthur R. Jackson and it is respectfully recommended that both defendants be dismissed from this case.

### Conclusions of Law.

From consideration of the evidence, the printed briefs and the oral argument, the examination of the authorities cited and from independent research made by the Special Master, the following conclusions of law are stated:

1. This court has jurisdiction of the parties hereto and of the subject matter of this cause.

2. The 22 Kelite formulae, listed in paragraph 40 of the Amended Complaint as (b) to (w) inclusive, were as a matter of law, unique and not known to the trade or public and were legal trade secrets and the property of Kelite at the time complained of by the plaintiff.

3. The customer lists of Kelite were trade secrets at the time complained of by the plaintiff.

4. The written agreements between Kelite and the five defendants who were found to have signed said contracts were valid covenants by the five employees to hold in confidence and secrecy the information and knowledge of Kelite's affairs, which they might learn while employed by Kelite.

5. The same defendants were bound to maintain the secrecy and confidence of Kelite regarding its trade secrets as a matter of law arising out of the fiduciary relationship existing between said defendants and their employer Kelite both during and after such employment.

6. The 22 formulae at issue herein are, as a matter of both fact and law, the unique and novel property of Kelite.

7. The defendants and each of them have been guilty of inequitable conduct in their wrongful appropriation of plaintiff's confidential information and trade secrets. There has been no proof that the defendants have misappropriated any of Kelite's technological procedures or secret methods of composition.

8. Plaintiff is entitled to a permanent injunction against future acts of defendants based upon their said inequitable conduct.

9. As an incident to the injunction the defendants should be divested of all copies of plaintiff's secret chemical formulae now in their possession or control.

10. Although there is no adequate or sufficient evidence in this record thus far to prove that the losses which Kelite claims to have suffered through the acts of the defendants resulted directly from such acts or that the reduction in Kelite's business, as stated, could have occurred only from the defendants' acts, there is, however, both legal and factual basis for ordering the accounting prayed for in the complaint, to determine whether such

alleged damages were suffered as claimed, due to the acts of the defendants. Such accounting is legally due Kelite from the defendants to determine the issue of the amount of damages suffered by Kelite, if any, as the result of the wrongful conduct of the defendants or any of them.

11. The plaintiff has failed to prove its charges that the defendants or any of them have been guilty of conspiracy as charged in the Amended Complaint herein.

12. Plaintiff is the owner of United States Letters Patent No. 2,381,124 and is entitled to all right to recovery herein.

13. United States Letters Patent No. 2,381,124 is valid.

14. The defendants and each of them except Edward Karas and Arthur R. Jackson have infringed Claim 1 of United States Letters Patent No. 2,381,124 by their manufacture and sale of the Khem product "803".

15. Plaintiff is entitled to a permanent injunction against future infringement of United States Letters Patent No. 2,381,124 by each of the defendants, and to an accounting for damages occasioned by their past infringement.