SERVICE SYSTEMS CORPORATION, Respondent, *v.* JAMES F. HARRIS, Appellant.

Fourth Department, February 23, 1973.

*Joseph A. Martino* for appellant.

*Saperston, Wiltse, Day & Wilson (Herbert J. Lustig* and *Bruce D. Drucker* of counsel), for respondent.

GOLDMAN, P. J. Defendant appeals from an order which granted a preliminary injunction to his former employer which restrained him from violating a restrictive covenant not to compete contained in the contract he executed, when he entered respondent's employment.

The respondent corporation has for many years engaged in the business of providing building maintenance services to industries and institutions. The appellant has had many years of experience as a supervisor and management executive in the kind of business operated by respondent.

On February 1, 1971 the respondent entered into a contract with the appellant to serve as regional director of respondent's Albany office. He also had responsibility for operations and sales in territory extending into northern New Jersey. The one-year employment contract designated appellant as management executive at an annual salary of $19,500. Insofar as pertinent, the contract provided that the appellant recognizes that respondent had invested much time and money in developing standards, controls, techniques and practices unique in the business and agrees that, for a period of 3 years subsequent to the termination of his employment, appellant would not solicit the maintenance of any building which had been managed or supervised by the respondent during a period of 18 months preceding the termination of his employment, assuming that appellant had been involved in the operation or solicitation of the facilities during

the 18-month period.[7] An additional restriction applied to customers of the respondent in the geographical area to which appellant was assigned or which he supervised or worked in during any part of a 9-month period preceding employment termination.

As a result of appellant's solicitation, respondent began serving a large shopping center and office development known as Stuyvesant Plaza, Inc. in Albany. At the end of January, 1972, Stuyvesant notified respondent that it was making other housekeeping arrangements as of March 1, 1972. Two days after reception of such notice, appellant notified respondent of his resignation and informed it that he was taking the Stuyvesant account. According to the moving papers, appellant had been carrying on a disparaging campaign against his employer, indicating that all top personnel in the maintenance department were leaving and also that respondent would be unable to service Stuyvesant. Appellant began servicing Stuyvesant on March 1, 1972.

Respondent sought a preliminary injunction in March, 1972 for enforcement of clause sixth of the agreement providing for noncompetition for 3 years after employment termination and also for a nondisclosure of confidential information; injunctive relief preventing the appellant directly or indirectly from soliciting respondent's customers and from disparaging respondent; and respondent also sought an accounting for proceeds wrongfully diverted by appellant and for all damages sustained by respondent. Special Term granted the respondent's application for a preliminary injunction pending the final determination of the action.

The issue is whether the restrictive covenant is enforceable by injunctive relief. A resolution of that problem depends upon two factors: (1) whether the provisions of the covenant are reasonable in scope and (2) whether the services performed by the appellant are unique or extraordinary. On this record both questions must be answered in the affirmative.

Employment contracts with restrictive covenants have not always been looked upon with favor by the courts. They were considered as contracts in general in restraint of trade and void as against public policy (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473, 479-484). With changing economic conditions, it eventually became clear that contracts restricting a person from carrying on a particular business were not per se to be regarded as in restraint of trade and, therefore, void (*Wood* v. *Whitehead Bros. Co.*, 165 N. Y. 545, 550-551; *Kaumagraph Co.* v. *Stampagraph Co.*, 235 N. Y. 1).

Postemployment restraints present an effective method of preventing unscrupulous competition by employees who may attempt to appropriate valuable trade information and to take advantage of customer relationships for their own unfair personal gain. On the other hand, these covenants restrict the economic mobility of employees and their personal freedom. There are certainly policy considerations which necessitate looking with disfavor upon approving the (loss of a man's ability to earn a living) and courts are careful to balance the interests of employer, employee and the public welfare. (Employers should be afforded reasonable protection from the pirating of their business by disloyal employees who agree by contract to refrain from such unfair activities) (*Bates Chevrolet Corp.* v. *Haven Chevrolet*, 13 A D 2d 27, 16 A D 2d 917, affd. without opn. 13 N Y 2d 644; *Millet* v. *Slocum*, 4 A D 2d 528, affd. without opn. 5 N Y 2d 734; *Lynch* v. *Bailey*, 300 N. Y. 615; *Murray* v. *Cooper*, 268 App. Div. 411, affd. without opn. 294 N. Y. 658; *Foster* v. *White*, 248 App. Div. 451, affd. without opn. 273 N. Y. 596; *Super Maid Cook-Ware Corp.* v. *Hamil*, 50 F. 2d 830, cert. den. 284 U. S. 677; 14 Williston, Contracts [3d ed.], § 1643, pp. 150–151; § 1643A, p. 157; Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625).

Are the restrictions fair and do they have as their only objective the protection of the legitimate interests of the employer? Are they of advantage to the employer only without giving sufficient consideration to making them as burdenless as possible to the employee? These are questions which must be answered before courts will deny or sustain enforcement. Basic to the consideration of the problem are five factors: (1) the restriction must be necessary for the employer's protection; (2) the time must be reasonable; (3) the geographical area must be reasonable; (4) the burden of the employee must not be unreasonable; and (5) the general public must not be harmed (Richards, Drafting and Enforcing Restrictive Covenants Not to Compete, 55 Marquette L. Rev. 241; Restatement, Contracts, § 516, subd. [f]). The facts of each case control as to whether a restrictive covenant is reasonable (*Karpinski* v. *Ingrasci*, 28 N Y 2d 45, 49; *Clark Paper & Mfg. Co.* v. *Stenacher*, 236 N. Y. 312, 321).

More particularly, the type of contract before us involves managerial and supervisory personnel who have access to confidential information and develop close relationships with customers. Customer relationship is a very important factor in determining whether the covenant will be supported by the courts. An employer has sufficient interest in retaining present customers

to support an employee covenant where the employee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business](see Enforceability of Restrictive Covenant [Time], Ann. 41 ALR 2d 15, 71 *et seq.*; Enforceability of Restrictive Covenant [Area], Ann. 43 ALR 2d 94, 164–175). Also of special significance is the issue as to confidential business information and whether the method, technique or know-how of the business has been developed by an employer through considerable investment of time, effort or money (see *Hulsenbusch* v. *Davidson Rubber Co.,* 344 F. 2d 730, 736; *Kelite Corp.* v. *Khem. Chem.,* 162 F. Supp. 332; *Eastman Kodak Co.* v. *Powers Film Prods.,* 189 App. Div. 556).

The appellant was engaged in duties and responsibilities upon the discharge of which would largely depend the success or failure of the respondent's business enterprise in the Albany area.) Appellant's background prior to joining the respondent involved an executive position in charge of sales and also the duties of a general manager. His were entirely different duties from those of the employee in *Janitor Serv. Mgt. Co.* v. *Provo* (34 A D 2d 1098), which case appellant urges requires reversal of Special Term's order. The employee in *Provo* was a supervisor of window washing crews, while appellant in the case at bar was a management executive with responsibility for developing and increasing business. With such responsibility, there is a correlative need of familiarity with the know-how of the enterprise. There is also close contact with customers. As for the scope of the limitations both as to time and geography, they were consonant with the protection of the respondent's legitimate interests. The appellant is not prohibited from engaging in the building maintenance business in Albany but for 3 years must not solicit accounts which he developed or which appellant may have serviced during a reasonable time prior to termination of the employment. Based upon the record before us the nature of appellant's responsibility and the restrictions as to time and place appear reasonable and the temporary injunction appropriate. There is no reason why the entire matter cannot be fully explored without delay in a plenary trial where the issuance of a permanent injunction will be determined.

The order should be affirmed, with costs.

DEL VECCHIO, WITMER, SIMONS and HENRY, JJ., concur.

Order unanimously affirmed, with costs.