**AMERICAN EUTECTIC WELDING ALLOYS SALES CO., INC., et al., Plaintiffs-Appellants,**

v.

**Pablo Garcia RODRIGUEZ, Defendant-Appellee.**

**No. 73–1048.**

United States Court of Appeals, First Circuit.

Submitted April 30, 1973.

Decided June 11, 1973.

Paul H. Blaustein, Sandoe, Hapgood & Calimafde, New York City, Guillermo A. Nigaglioni and Nigaglioni & Palou, Santurce, P.R., on brief, for appellants.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

Levin H. CAMPBELL, Circuit Judge.

Plaintiffs appeal from the district court's refusal to issue a preliminary injunction forbidding defendant, a former employee,

from soliciting orders from the same customers Garcia solicited for plaintiff for selling welding products directly competitive with those he sold for plaintiff, for a period of two years from August 13, 1971, the date of ter-

mination of Garcia's employment with plaintiffs.

We reverse, for the reasons set forth below.

Plaintiffs filed an amended complaint on February 4, 1972 alleging that they are corporations engaged in the production and marketing of welding and soldering alloys and related products; that Garcia was hired on September 14, 1966, after entering into an employment contract [1] in which he agreed that for a two-year period following termination of the agreement he would not work for any competitor in the same territory he covered for American Eutectic, during the last two years of his employment and within a 50 mile radius thereof; and that he agreed to maintain Eutectic's "customer lists and identifications" and other business secrets confidential.

Plaintiffs originally prayed for injunctive relief prohibiting Garcia from disclosing confidential customer information, from calling upon Eutectic's customers, and from employment in competition with plaintiffs for a period of two years from the date he left Eutectic. However, on April 27, 1972, plaintiffs moved for summary judgment, limited to the narrower issue of enjoining Garcia from soliciting customers as set forth above. The defendant opposed the motion on its merits and moved to dismiss the complaint. The matter was submitted on a record consisting of the pleadings, affidavits, depositions, and live testimony at a hearing held May 31, 1972. The district court, 353 F.Supp. 850, rendered its decision some seven months later, denying "plaintiffs' motion for summary judgment requesting a preliminary or permanent injunction"

---

[1]. The relevant clauses of the agreement are as follows:

"7. It is our firm company policy that the following provisions constitute a part of your employment agreement:

a) As certain confidential information regarding our products and working methods has been and/or will be furnished to you, you expressly covenant that you will keep inviolate and never, during and after your employment with us, directly or indirectly, use against the interests of our Company, or for yourself (except while you are in our employ and solely in pursuit of your activities as our employee), disclose, communicate, divulge or furnish to any other person, firm or corporation, any confidential information or business secrets relating to our Company and our parent or affiliated companies, the conduct of our or their operations and working methods, the materials, processes, plans, designs, models, apparatus, equipment, names of our or their suppliers and formulas used in our or their manufacturing operations and experimental investigations, any commercial or technical information including our customers' requirements, improvements or things of which you may have gained knowledge, or discovered, invented or perfected while in our employ, or that of our parent or affiliated companies, or within six months after the termination of your employment, or any ideas or processes of manufacture of any product or article sold or distributed by us which may be communi-cated to you or which you may learn by virtue of your activities under this agreement.

c) As we and our parent and affiliated companies manufacture and/or sell under a variety of trademarks a specialized line of welding materials and products and a specialized line of equipment for use in welding and in connection therewith have developed special formulations and equipment and utilize a specialized technique of sales and service concerning which you will, during your employment with us, receive training and access to confidential information, you agree that you will not, anywhere in the territory or territories in which you worked in our employ within two years prior to the termination of this agreement and within a radius of fifty miles from any such territory or territories, without the prior consent of our Company, signed by our President or one of our Vice-Presidents, during and for a period of two years after your employment with us ceases, enter the employ of or render any services to any person, firm, partnership or corporation dealing in materials, products or equipment or a line of materials, products or equipment which compete with any of the materials, products or equipment which we and/or our parent or any of our affiliated companies market, or engage in any competing business on your account or become interested therein as a director, principal, representative, employee or any other relationship or capacity."

and also denying "defendant's motion for summary judgment requesting a dismissal."[2] The plaintiffs appealed under 28 U.S.C. § 1292(a) from "the Order denying Preliminary Injunction."

The defendant, Garcia, was hired by Eutectic on September 14, 1966 as a salesman of welding materials. He was by then an experienced salesman, having worked in 1961 for Sears, Roebuck at Santurce selling household appliances, then for a Mr. Otero as a razor salesman, and finally for E. Leon & Company as a salesman of building materials. After a three-week training period at Eutectic's New York office, he returned to Puerto Rico and began selling Eutectic's products in the Northeast area.

Garcia was given a number of "customer cards" containing the names of Eutectic customers and additional data such as whom to contact, what the customer had previously ordered, and what the customer's special needs were. In the course of his employment, Garcia made periodic calls upon Eutectic customers to sell the company's welding products and to consult with and advise customers on welding problems. In this manner, he gained an intimate knowledge of the customer's needs and specialized requirements.

In 1968 Garcia was promoted to District Supervisor. He was then responsible for Eutectic's sales throughout Puerto Rico. He supervised two other salesmen, to whom he distributed all his customer cards except the most lucrative 20%; these he continued to service personally. In January 1971, Garcia became Regional Manager. Although his duties remained essentially what they had been as District Supervisor, Garcia was the highest-ranking Eutectic employee in Puerto Rico, with three salesmen under him.

On August 13, 1971, Garcia resigned from Eutectic to join a competitor, Anibal L. Arsuaga, Inc.[3] As an ALA welding salesman, he now calls upon a substantial number of former Eutectic customers and undersells his former employer. Although Eutectic's sales in Puerto Rico had not declined eight months after Garcia began working for ALA, plaintiffs fear that Eutectic's sales will decline in the future because Garcia will take more and more of his former customers to ALA; Eutectic is exposed to a loss of customer goodwill due to Garcia's defection; and confidential data such as Eutectic's pricing policies will be used to benefit the competition.[4]

■ The party challenging a denial of a preliminary injunction "must show either a clear error of law or an abuse of discretion by the district court in denying the injunction." Automatic Radio Mfg. Co. v. Ford Motor Company, 390 F.2d 113, 115 (1st Cir. 1968), cert. denied 391 U.S. 914, 88 S.Ct. 1807, 20 L. Ed.2d 653 (1968). Appellants have, in our judgment, made such a showing.

■ The terms of the contract provide that it is to be governed by the law of New York. Under New York law, as under the law generally prevailing in the United States, a restrictive employment covenant is enforceable to the extent reasonable,[5] and "[W]ill generally be

2. The district court properly ruled against the defendant's contention that it lacked jurisdiction because the amount in controversy did not exceed $10,000. 28 U.S.C. § 1332(a).

3. ALA sells many other products in addition to welding materials; "copper products, tubes, copper fittings, safety equipment, firefighting equipment . . . general plumbing supplies, great variety of lines." Garcia stated that he was being trained in all these product lines, although presently he is devoting nearly 100% of his time to selling welding materials.

4. There was evidence that Eutectic's welding products were relatively expensive, and that consequently one of their greatest problems was underselling by the competition.

5. See Universal Electric Corp. v. Golden Shield Corp., 316 F.2d 568 (1st Cir. 1963) (construing the law of New York); Karpinski v. Ingrasci, 28 N.Y.2d 45, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971); Service Systems Corp. v. Harris 41 A.D.

found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." Solari Industries, Inc. v. Malady, 55 N.J. 571, 264 A.2d 53, 56 (1970).

■■ The instant case presents a near-classic situation for enforcement. *See* Restatement of Agency, 2d § 396, Illustration 1, p. 224; Service Systems Corp. v. Harris, *supra*. Defendant salesman, having obtained an intimate knowledge of Eutectic's customers and their needs in the course of his employment, is exploiting his knowledge for the benefit of a competitor in violation of contract. Limited in duration, the restriction sought to be enforced would not prevent him from using his skills as a salesman, except to the narrow extent needed to protect Eutectic from obviously unfair competition. Whether the full range of restrictions in the contract are reasonable need not concern us. The only issue is the reasonableness of the requested injunction; even an overly-broad covenant is enforceable to the limited extent reasonable. Karpinski v. Ingrasci, *supra*; Premier Industrial Corporation v. Texas Industrial Fastener Company, *supra*; Solari Industries, Inc. v. Malady, *supra*.

The only aspect of the court's opinion requiring more extended consideration is its ruling that, although New York law

2d 20, 341 N.Y.S.2d 702 (1973); Purchasing Associates, Inc. v. Weitz, 13 N.Y. 2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963); Premier Industrial Corporation v. Texas Industrial Fastener Company, 450 F.2d 444 (5th Cir. 1971) (construing Ohio law); Arthur Murray Dance Studios of Cleveland v. Witter, 62 Ohio Law Abst. 17, 105 N.E.2d 685 (Court of Common Pleas, Cuyahoga County 1952) (containing an exhaustive review of the authorities and relied upon by the Superior Court of Puerto Rico in Oliver Exterminating Services Corp. v. Felix Garcia Franco, *infra*; Briggs v. Butler, 140 Ohio St. 499, 45 N.E.2d 757 (1942) (relied on by the *Oliver* court); Award Incentives, Inc. v. Van Rooyen, 263 F.2d 173 (3rd Cir. 1959) (cnostruing New York law); Avallone v. Elizabeth Arden

is otherwise applicable, the public policy of the forum, as expressed in Article II § 16 of the Constitution of Puerto Rico,[6] precludes relief.

■■ Puerto Rico is not bound by the policies of other jurisdictions, and we give great weight to the district court's interpretation of its constitution. But we discover no facial inconsistency between the language of Article II § 16 and the narrow relief here sought.

Plaintiffs merely ask that for a limited time Garcia not solicit orders for competing products from the same customers he solicited while working for them. It was through his employment with Eutectic that Garcia became familiar not only with its customers but with its prices and products, and was thus placed in a particularly advantageous position both to undersell Eutectic and woo its customers.

We are unaware of any Puerto Rico authority construing the constitutional "right of every employee to choose his occupation freely and to resign therefrom" as guaranteeing to employees a right to disregard employment contracts prohibiting misuse for a limited period of time of customer contacts obtained during former employment. By way of analogy, the even more sweeping language of the First Amendment to the United States Constitution is not thought to confer a right to publish a

Sales Corp., 344 Mass. 556, 183 N.E.2d 496 (1962); 14 Williston on Contracts, 3 ed. Jaeger, § 1636; Restatement of Contracts §§ 513-516, particularly § 516 (f) (1932); Restatement of Agency 2d § 396, Illustration 1, p. 224 (1958); Annot. 41 A.L.R.2d 1 (1955) and cases cited therein; Annot. 43 A.L.R.2d 94, particularly § 25 (1955); Blake, Employee Agreements Not To Compete, 73 Harv.L.Rev. 625 (1960).

6. "The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risk to health or person in his work or employment and to an ordinary workday which shall not exceed eight hours."

book copyrighted by another. One might suppose that Article II § 16 of the Constitution of Puerto Rico merely enunciates a principle analogous to the common law rule set forth in Wilson v. Clarke, 470 F.2d 1218, 1221 (1st Cir. 1972):

> Bargains between employers and employees which place restrictions upon an employee's exercise of a gainful occupation after leaving the employer are, and were at common law considered to be, void as in restraint of trade. Restatement of Contracts, §§ 513–515. Sherman v. Pfefferkorn, et al., 241 Mass. 468, 474, 135 N.E. 568, 570 (1922). Exceptions are made, however, if the restriction is reasonable, "and not wider than is necessary for the protection to which the employer is entitled . . .."

Any doubt we might have whether Puerto Rico has adopted this "rule of reason" is resolved by the case of Oliver Exterminating Services Corp. v. Felix Garcia Franco, (Superior Court of Puerto Rico, San Juan Part, Civil 63–5032, decided January 27, 1965), writ of revision denied by the Supreme Court of Puerto Rico, April 12, 1965 in case R–65–37.[7]

In *Oliver*, the employee held a university degree in civil engineering, and had taken graduate courses relating to the control of insects and rodents. After nineteen years with the Health Department as a sanitary engineer, he left government service and obtained employment as the general manager of an exterminating firm. He was in constant touch with the firm's clients, and utilized his contacts at the Health Department to the advantage of his firm. After an unsuccessful attempt to buy out his employer, he attempted to recruit some of his fellow-workers to staff a new, competitive firm which he was planning to organize. He subsequently became President of this new corporation.

As soon as Garcia presented his resignation, he contacted numerous clients of his former employer, informing them that he was now actually offering his services to Puerto Rico Exterminating Co., Inc., asking them to cancel their old contracts and sign new contracts with the firm for which he was working. Many of these clients showed themselves to be receptive to Garcia's insinuations, cancelled their old contracts and became clients of the new corporation. Also, one of the employees of Exterminating Services of Puerto Rico, Inc. abandoned his employer and followed Garcia to the new organization.

In upholding a restrictive clause in the employment agreement forbidding the employee from directly or indirectly approaching the firm's clients to sell them services related to extermination and from working in any form of the extermination business in Puerto Rico or the Virgin Islands, Judge Moreda stated:

> As a general rule, these clauses are valid if same prove to be reasonable. Reasonable as far as the employer, with regard to the employee and with respect to the public in general.

Judge Moreda listed some 46 factors which might be considered in deciding if an employment restriction were reasonable. Examining these factors and applying them to the undisputed facts of the present case, we conclude that the restrictions sought to be enforced are reasonable.

The relief sought is limited to what is reasonably necessary for the protection of Eutectic's legitimate business interests. Although Garcia's employment contract forbade him from working for any firm which dealt in competitive products, the requested preliminary injunction would merely prevent him from soliciting welding orders competitive with Eutectic's product line from customers he had called on for Eutectic.

---

7. The constitutional issue was raised by the employer in its argument to the Supreme Court of Puerto Rico.

Garcia could solicit others,[8] or since ALA deals in many other product lines, Garcia could continue to work for ALA selling non-welding materials. As a further alternative, with his extensive sales experience he could work as a salesman for another concern. As Judge Moreda observed in *Oliver*:

> Though he may suffer some inconveniences, there is no founded fear that we may be condemning him to hunger and misery and the danger does not exist that he would become a social burden.

> We similarly believe that the plaintiffs have proven that if the injunction is not conceded their business would suffer irreparable damage upon revealing that the defendant has tried and is continuously trying to take their clients, having been successful in various occasions.

■■ It is immaterial that the defendant was not shown to have "divulged trade secrets or confidential information," or that he was "privy to any confidential data" (other than its customers cards and lists). No showing of such wider harm, nor of executive-suite intrigue, was needed to warrant the injunction sought, preventing Garcia, for a relatively short time, from using his knowledge of Eutectic's customers to Eutectic's disadvantage.[9] Eutectic does not have to submit to irreparable harm before it can obtain preventive relief.

This proceeding was brought on February 4, 1972. It was taken under advisement by the district court on June 15, 1972. For reasons unclear no opinion on the issue of preliminary relief was rendered until January of 1973. If plaintiffs are to win anything but a phyrric victory, they must receive relief without further delay. We remand with instructions to issue a preliminary injunction forthwith.

Not later than one month after the date of this opinion, the district court shall hold a further hearing and shall determine whether or not, under all the circumstances, the continuation of injunctive relief beyond August 13, 1973 is warranted under principles stated in Premier Industrial Corporation v. Texas Industrial Fastener Company, 450 F.2d 444, 448 (5th Cir. 1971).

Reversed and remanded for proceedings consistent herewith.

---

8. In stating that he "could solicit others" we refer merely to the scope of the requested injunction. There is no occasion for us to decide whether the contract was reasonable and enforceable insofar as it might be read to prevent Garcia from working for ALA at all.

9. As the Appellate Division stated in Service Systems Corp. v. Harris, 41 A.D. 2d 20, 24, 341 N.Y.S.2d 702, 705 (1973):

"Customer relationship is a very important factor in determining whether the covenant will be supported by the courts. An employer has sufficient interest in retaining present customers to support an employee covenant where the employee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business."