## Abalene Pest Control Service, Inc. v. Minot Hall d/b/a L & H Pest Control Service

[ 220 A.2d 717 ]

April Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 7, 1966

*Black, Wilson & Hoff* for plaintiff.

*Joseph S. Wool* for defendant.

**Shangraw, J.** This is an action in equity brought by the plaintiff, Abalene Pest Control Service, Inc., to enjoin the defendant, Minot Hall, from engaging in a competing business in violation of the terms of an employment contract. Equitable relief was denied and the plaintiff appeals.

The following facts are not in dispute. The All Vermont Exterminating Co., Inc. (hereinafter referred to as "All-Vermont") was organized as a Vermont corporation in August, 1944. This corporation was organized for a number of general purposes, but insofar as this action is concerned, the relevant purposes of organization were to deal in chemicals and chemical products for use in the extermination of rats, mice, roaches, bugs, and other vermin. This corporation was authorized to enter into contracts for cleaning residences, hotels,

office buildings, hospitals, factories and other such buildings for the purpose of freeing them from the above pests and vermin. The company developed regular customers who were visited frequently for the purpose of furnishing such services.

The charter of "All-Vermont" was forfeited on April 1, 1946 for failure to file the proper tax returns and pay the annual license tax. However, its charter was reinstated by decree of the Court of Chancery of Rutland County, February 7, 1950, under the provisions of Section 2, of No. 136 of the Acts of 1949, which in part reads as follows:

"The charter of any corporation terminating between January 1, 1943 and June 1, 1947, because of failure to pay the license tax imposed by Chapter 43 of the Public Laws of 1933, may be reinstated by the court of chancery of the county where such corporation has its principal office, on petition to such court provided such petition shall be filed prior to June 1, 1950. . . ."

On or about November 17, 1947, "All-Vermont" employed the defendant, Minot Hall, to assist as a service man, in the conduct of its business. A written contract was entered into between the parties for a period of two years, which, in substance, consisted of an agreement on part of defendant to perform fumigating services in the counties of Lamoille, Orleans, Caledonia, Orange, Washington and Essex, Vermont, including Littleton, N. H. During his employment, the defendant worked in territories in Vermont and New Hampshire, other than the foregoing, including places in New York.

The contract provided that for a period of two years after termination of the agreement, the defendant would not compete with the employer in the areas to which he had been assigned, either on his own account, or as agent of or on behalf of any other individual, partnership, firm or corporation.

The defendant further covenanted, that during the term of the contract and for five years thereafter, he would not communicate or divulge, disclose or furnish, except to "All-Vermont," the names and addresses of any customers; any information concerning any of the customers; nor would he solicit customers, business or patronage for the extermination or fumigating business within the specified territory or to which he may have been assigned.

The contract of employment also in part contained the following provisions:

"6. That this agreement shall be in force as long as the Second Party shall be in the employ of the First Party, whether such employment shall be continuous or not; and any re-employment from time to time, is hereby mutually recognized and accepted as a renewal of, and ancillary to, this original contract, with the same force, effect, extent and purpose as if executed again by each and both of said parties, without the necessity of actually executing a new contract, the provisions in respect of time and restrictive covenants, however, to date from the latest employment.

8. It is understood and agreed that if the First Party shall, during the term of this agreement, form a partnership that shall acquire the business now conducted by them, or if the First Party shall sell its business to any corporation, then, and in either of such events, the First Party shall have the right to assign all its right, title and interest in this contract to such partnership or corporation; provided, however, that such partnership or corporation shall assume and agree to perform, from and after the date of such assignment, all of the terms, provisions and conditions hereof, with the same force and effect as if such partnership or corporation had originally been the First Party hereunder.

9. It is understood and agreed that the provisions of this contract shall inure to the benefit of the heirs, administrators, successors and assigns of the First Party."

The Vermont Chemical Company, Inc., was organized as a Vermont corporation on the 6th day of January, 1949. Under date of March 4, 1949, the All Vermont Exterminating Co., Inc. (not then in existence because of the lapse of the charter, which charter was later reinstated) and Walter Blank executed a bill of sale and assignment to the Vermont Chemical Company, Inc. The pertinent provisions of this instrument read as follows:

"All of the assets heretofore owned by the aforesaid All Vermont Exterminating Company, Inc., including stock in trade, furniture and fixtures, cash, accounts receivable as shown on the books of said All Vermont Exterminating Company, Inc. . . . This transfer and assignment includes all the rights of either the

said All Vermont Exterminating Company, Inc. and Walter Blank in and to contracts standing in the name of All Vermont Exterminating Company, Inc."

On March 23, 1949 the Vermont Chemical Company, Inc., by an amendment of its Articles of Association, changed its name to All New England Exterminating Co., Inc.

By an instrument dated May 30, 1950, entitled "Bill of Sale," the "All-Vermont" sold rights and property to the All New England Exterminating Co., Inc. The pertinent parts of this instrument, in reference to what was sold, are as follows:

"All its property both real and personal, including but not limited to all its rights, title and interest in and to all its contracts, equipment, supplies, leases and good will."

On November 30, 1950, "All-Vermont" was dissolved. The firm name All New England Exterminating Co., Inc. was used until July 29, 1960, at which time by proper amendment of its Articles of Association the name was changed to read Abalene Pest Control Service, Inc., the plaintiff herein.

The defendant worked continuously for the plaintiff, or its predecessors, from November 17, 1947, until November 30, 1962, on which latter date plaintiff gave defendant notice of his release. Defendant received four weeks' pay and other benefits in compliance with his contract of employment. At the time of his release the defendant was employed by the plaintiff in the following towns in Vermont—Bristol, Vergennes, South Hero, North Hero, Burlington, South Burlington, Winooski, Essex Junction, Colchester, Shelburne, Starksboro and New Haven.

Subsequent to the termination of his employment on November 30, 1962 and before the expiration of two years from that date, the defendant formed the L & N Pest Control Service in Burlington, Vermont, and engaged in a competing business with plaintiff in Burlington and Winooski, Vermont.

Thereafter, and before the expiration of the two year period, the plaintiff brought this suit to enjoin the defendant from rendering exterminating or fumigating services, or soliciting or attempting to solicit the customers, business and patronage of the plaintiff within the territory to which he was assigned while employed by plaintiff.

On July 9, 1963, the plaintiff was granted a temporary order restraining the defendant from engaging in the business of rendering exterminating or fumigating services, and from soliciting or attempting to solicit the customers, business and patronage of the plaintiff within certain limits. By the final judgment order the temporary injunction was dissolved, and judgment rendered in favor of the defendant in the sum of $500.00 as damages incurred by the issuance of the temporary injunction.

It is apparent that the foregoing judgment order is predicated on the following numbered findings, to which plaintiff excepted, and which findings are in substance as follows: (12) All-Vermont was not in existence on March 4, 1949 at the time bill of sale and assignment was executed in favor of Vermont Chemical Company, Inc.; (15) at no time was defendant consulted by the plaintiff or any of its predecessors as to the transfer and change and/or assignments which affected him, nor at any time did he consent to such transfer and assignments; (20) the contract of employment is such, and the type of work is such that it is inherently personal to the parties and permeates the entire transaction and, as such, it is incapable of effective assignment without the employee's consent or ratification; (21) defendant was "just a service man" and did not have any knowledge of the business of the plaintiff other than the practical side of it which he acquired in the course of his employment; and (22) that the terms of the contract have been breached and ignored by the parties; the contract has ceased to exist; and that the "enforcement of the restrictive clause would do more harm than good and would deprive the petitionee of earning a living . . . ."

Finding No. 12 carries the implication that the validity of the bill of sale and assignment made by "All-Vermont" to the Vermont Chemical Company, Inc. during the period of forfeiture of the charter of the former corporation might be in question. This bill of sale was executed March 4, 1949. Any shortage in this transfer arising from the forfeiture of the charter of "All-Vermont" was cured by the reinstatement of its charter by decree of the Rutland County Court of Chancery under the provisions of Section 2 of No. 136 of the Acts of 1949 which reads in part:

"Upon reinstatement, such corporation shall be restored to all the rights and privileges and subject to all the duties and liabilities

which it had at the time such charter was forfeited . . . . All acts done by such corporation and its officers and employees between the time of the forfeiture of such charter and the time of the restoration of the same hereunder shall have the same force and effect as though such forfeiture had not occurred."

The defendant has filed no brief in this appeal. The validity of the chancery decree, reinstating the charter, stands unchallenged on this appeal.

Moreover, the sale and assignment, of which we are concerned, was later confirmed by the transfer made by "All-Vermont" of its assets, including contracts, after the reinstatement of its charter, to All New England Exterminating Co., on May 30, 1950.

At all times mentioned, the corporations operated under the various names were owned by Walter O. Blank, and while there had been a change of names, there had been, in reality, no change of employers of the defendant since the execution of the contract of employment on November 17, 1947. The scope of defendant's employment remained unchanged.

While defendant was not actually consulted as to the sale and assignment of the assets by "All-Vermont," and changes of name, he was fully aware of the changes in the corporate name and continued to work in the same capacity for a period of over twelve years. At the conclusion of his employment, the defendant freely accepted the benefits of the contract by way of (4) weeks' pay and commission. This demonstrates to our satisfaction that the parties intended the contract to be assignable, not only because it so provided, but also by reason of the conduct of the parties. The restrictive covenants, agreed to by the defendant, were designed to protect "All-Vermont" and its successors against competition by the defendant as expressed in the agreement.

■ Our statutes recognize and authorize the transfer of corporate assets by sale, merger and consolidation between different corporate entitities. And it is provided that the acquiring corporation shall possess all the rights, privileges and benefits of the original corporation properly exercisable under the laws of the state. 11 V.S.A. §§161, 165. *Smith, Bell & Hauck* v. *Cullins*, 123 Vt. 96, 100, 183 A.2d 528.

As stated in 35 Am. Jur. Master and Servant, §33,

"The incorporation of the employer's business without other change does not abrogate the contract of employment, or alter the liability of the parties one to the other. The same is true of a merging or combining of the business with those of others."

See *Seligman & Latz of Pittsburgh, Inc.* v. *Vernillo,* 382 Pa. 161, 114 A.2d 672.

■ The crux of this controversy is whether or not the contract of employment was assignable by "All-Vermont." The controlling factor is the intention of the parties to the original undertaking. *Smith, Bell & Hauck* v. *Cullins, supra,* 100. This was clearly spelled out in the above quoted paragraphs 8 and 9 of the contract, authorizing and agreeing to its assignability.

■ To be sure, there are cases where the assignment of an employment contract has been held invalid because it was inherently personal to the parties. *Smith, Bell & Hauck* v. *Cullins, supra.* In that case, the contract contained no provision for assignability, or that such eventuality was contemplated or considered by the parties at the time of their agreement. This was the turning point in that case. In the case at bar, the contract expressly states that it is assignable, and no facts appear to demonstrate a contrary intention.

As stated in 2 Williston on Contracts, §423, (Revised Edition),

"Rights which would not otherwise be capable of assignment because too personal in their character and duties, the performance of which for a similar reason could not be delegated, may be assigned or delegated if the contract so provides, or if in the absence of such a provision the other party consents."

See *Wolbert* v. *Rief,* 194 Md. 642, 71 A.2d 761, citing, *Cochran* v. *Taylor,* 273 N.Y. 172, 7 N.E. 2d 89; Restatement, Contracts, §§159, 162; *Whiting* v. *William H. Crawford Co.,* 93 Md. 390, 401, 49 Atl. 615.

Moreover, the contract, paragraph 5, sub-division (d), recognizes and so states that the covenants of the defendant were made for the protection of the good will and business that may have been, or may hereafter be, acquired upon the territory over which he may have charge or to which he may be assigned. As part consideration of the

agreement the defendant therein assigned, transferred and conveyed to "All-Vermont" all right, title and interest in the good will and business upon territory then existing or that hereafter may be acquired or claimed by him in any manner.

By finding (21) the Chancellor found that the defendant was just a service man and did not have any knowledge of the business of the plaintiff other than its practical aspects which he acquired during his employment. This finding is refuted by the provisions in the contract defining his duties, among which were to work as an exterminator and fumigator and to sell, solicit and make contracts for such services within his territory. This afforded the defendant confidential information concerning plaintiff's business, names of customers and patrons in the territory within which he operated.

The Chancellor determined by finding (22) that the contract had been breached and ceased to exist prior to the defendant's termination of employment. There is no evidence to support this finding.

The final judgment order was made on April 20, 1964, within two years following termination of the defendant's employment. Plaintiff should have been granted an order restraining the defendant from engaging in a competitive business, within the territory designated or assigned, for a period of two years following his dismissal as an employee. The two years having now expired, this phase of the case is now moot.

Paragraph 5 (c) of the contract provides:

"The Second Party further expressly covenants and agrees, which covenant and agreement is of the essence of this contract, that he will not, during the term of this contract, and for five years thereafter, whether in the employ of the First Party, or not, communicate or divulge, disclose or furnish, except to the First Party, the names and addresses of any customers of the First Party or any information concerning any of such customers, nor will he, during said period, for himself as the agent of, on behalf of, or in conjunction with, any person, partnership, association or corporation, solicit, or attempt to solicit, customers, business or patronage, for the exterminating or fumigating business from any person, partnership, association or corporation within the territory specified herein, and of which he may have had charge or to which he may have been assigned while in the employ of the First Party."

Plaintiff is entitled to an order restraining defendant from a violation of the provisions contained in paragraph 5 (c) ; *supra.*

For reasons expressed in this opinion, the defendant is not entitled to damages.

*Judgment reversed. Cause is remanded for a suitable order consistent with the views expressed in this opinion.*