MARGIE G. MCNABB, ADMINISTRATRIX OF THE ESTATE OF ROBERT MCNABB, DECEASED v. DONALD G. MASON.

[No. 269A25. Filed December 17, 1970.]

---

1. Judge Lybrook participated in this case by special designation.

*Howard E. Petersen,* of LaGrange, for appellant.

*William F. McNagny, Robert L. Thompson, Jr., Barrett, Barrett & McNagney,* of counsel, of Fort Wayne, for appellee.

SULLIVAN, J.—In this medical malpractice action initiated by the appellant's decedent for damages against defendant-appellee, Dr. Mason, the summary judgment motion of the defendant was sustained. An appeal on the judgment was taken.

The amended complaint filed by plaintiff's decedent charged that on September 22, 1962, the defendant was consulted professionally concerning a circumcision operation to be performed upon the plaintiff, a forty-nine year old married man; that the defendant performed an operation but that during the surgery he negligently cut the urethra of the plaintiff causing abnormal urination through the site of the incision and that defendant also exercised, without authorization, two substantial portions of the plaintiff's penis upon which laboratory analysis indicated a wart condition, which according to plaintiff's complaint was apparent by visual observation; that a subsequent operation was authorized for circumcision but that during the latter surgery two more portions of the penis were excised; and that a post-operative acid treatment for warts was then negligently prescribed and used by defendant upon the plaintiff. As a result of these procedures, plaintiff asserted that a major portion of his penis was severed; that he was unable to have sexual relations with his wife; that he incurred debts; that his body had become debilitated; his ability to work impaired, and that he suffered great physical pain and mental anguish.

The defendant-appellee denied plaintiff's allegations and in his answer claimed that he was consulted concerning a gross

inflammation, soreness and discharge of plaintiff's penis; that he advised and later did perform surgery by making an incision upon the dorsal side of the prepusa of plaintiff's penis in order to determine the cause of the inflammation; that observing a condition indicating a predisposition to cancer he followed standard and accepted medical procedure by removing two tissue samples, .5 to .8 centimeters in diameter, for laboratory tests; that after consultation and examination of plaintiff by a urologist a second operation involving the removal of warts by electro-cautery was advised and also performed by defendant; and that post operative treatment as well as all other treatment was rendered according to the accepted medical standard of due care in the treatment of such condition in the locale.

After five years of assorted and varied legal skirmish and delay,[1] during which the plaintiff McNabb's widow and administratrix became substituted as party plaintiff, defendant filed a motion for summary judgment. The motion was accompanied by the affidavits of the defendant and the consulting physician, Dr. Ward. Said motion, in part, reads as follows:

> "The affidavits show conclusively that the treatment given the plaintiff was correct for the condition for which he was suffering and that his problems stem entirely from his own conduct, habits and failure to follow the doctor's directions.
>
> "It is the understanding of the undersigned that the plaintiff is deceased by reason of a malignancy which is the very condition for which defendant herein took precautions in the form of a biopsy. Plaintiff, as shown by the affidavit of Dr. Mason, was in a state which often preceeds a malignancy and he was so treated. The fact that the plaintiff later developed a malignancy and died therefrom is about the most conclusive evidence one could present that he was being treated in the proper fashion by Dr. Mason.
>
> "The court is further asked to note the period when this case has pended and the complete inactivity on the part of the plaintiff for a considerable period of time."

---

1. Among other events causing interminable delay in the prosecution of this cause were two venue changes, three trial settings and several withdrawals of appearance by plaintiff's various counsel.

No affidavits or other evidence were offered by plaintiff-appellant.[2] After hearing, the court sustained defendant's motion and entered judgment thereupon.

Although plaintiff-appellant alleges several instances of error upon appeal only the propriety of the court's ruling on the summary judgment motion will be here considered.

The relief granted is supported solely by two affidavits. The affidavit of Dr. Gerald Ward, consulting physician, indicated an opinion that the treatment administered by defendant met every standard of due care in the community. That opinion was extremely generalized and conclusionary in nature and was directed by its specific language only to the treatment subsequent and relative to the dorsal incision made by defendant. It did not relate to other allegations by plaintiff of negligent treatment, e.g., biopsy excisions or acid treatment. Defendant's affidavit stated that Mr. McNabb was treated initially for inflammation of the penis at which time circumcision was advised but to be performed subsequently. A second operation was performed for removal of warts, not for cancer, though plaintiff had a condition predisposed to cancer. The affidavits of both Drs. Ward and Mason for the most part contain mere conclusions which may or may not be accurate depending upon the unstated facts supporting such conclusions and upon the credibility of the individual stating such opinion. We have held that in such instances the granting of a summary judgment is improper. *Mayhew* v. *Deister* (1969), 144 Ind. App. 111, 244 N. E. 2d 448.

As noted in *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688, 695:

"* * * Summary judgment is seldomly appropriate in negligence cases where the standard of the reasonable man

---

2. It should be noted that at the time of the summary judgment proceedings, Robert McNabb, the original plaintiff was deceased. It was and is, therefore, impossible for his administratrix to procure his evidence by counter affidavit or otherwise.

> must be applied to conflicting evidence. Even in cases of undisputed facts it is usually for the trier of fact to determine whether the conduct in question met the standard of the reasonable man.

> "* * * If there is a question as to the state of mind, credibility of witnesses or weight of testimony summary judgment should be denied.

> "* * * Even where the trial judge may surmise that the proponent of a motion for summary judgment is likely to prevail at the trial, this is not a sufficient basis for refusing the respondent to a motion for summary judgment his day in court with respect to any genuine issue as to a material fact."

We believe such to be the case here.

There were several indications of record which would lead one to strongly infer, if not clearly determine that a genuine issue existed as to material facts. In answers to interrogatories, the defendant indicated that the physician-patient relationship terminated when Mr. McNabb refused to follow instructions and consulted another doctor. Defendant further stated that in his opinion the cause of the disability, which plaintiff alleged was caused by defendant's negligence, was the presence of carcinoma in addition to veneral warts and existent at the time of defendant's treatment of plaintiff. Further, Dr. Ward in a deposition which was before the trial court during the summary judgment proceeding, recalled that the original biopsy "did not show any sort of malignant condition." Dr. Ward additionally stated that upon examination following the initial surgery he was not sure whether Mr. McNabb's urine voided through the side of the penis rather than in the usual manner. He also said that his personal preference for removal of warts, such as those present upon Mr. McNabb, was by surgical excision rather than by electrocautery or the chemical and drug treatment used by defendant, Dr. Mason, and that such chemical application might possibly aggravate an existing carcinogenic organ.

The purpose of the summary judgment procedure as embodied in Ind. Ann. Statutes § 2-2524, (Burns' 1968 Repl.),

and in Trial Rule 56 of the new Indiana Rules of Civil Procedure is to terminate litigation of a cause about which there can be no legal or legitimate factual dispute. While the primary goals of the procedure historically have been the elimination of both undue economic and temporal burdens upon litigants and the exposé of spurious law suits, the pursuit of such worthy ends must not be permitted to thwart the right of parties to have a fair determination of genuine issues within a valid cause. This court was mindful of the possibility of abuse in the determination process of summary judgment motions when it appended the following proscription in *Mayhew v. Deister, supra:*

" 'Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use.' * * *." Page 452.

It is through fear of misapplication of the summary judgment statute that a number of recent opinions have focused upon, and attempted to elucidate, the rather stringent requirements of the successful motion. Thus, the burden of proof is on the proponent of a motion for summary judgment to conclusively demonstrate the absence of any genuine issue as to material fact and that such proponent is entitled to judgment as a matter of law. Any doubt concerning the existence of a genuine issue of such material fact so as to preclude granting summary judgment must be resolved against the proponent. *Doe v. Barnett, supra.* A positive duty exists in the trial court to consider all evidence, and to direct its attention to valid evidentiary inferences most favorable to the non-moving party to determine if any issue of fact exists. Moreover, the party opposing the motion is entitled to the most favorable inferences and the benefit of every doubt. *Newcomb v. Cassidy* (1969), 144 Ind. App. 315, 245 N. E. 2d 846. As earlier noted appellant here did not produce counter-affidavits in the summary judgment proceeding. Implicit, therefore, in appellee's argument to affirm the summary judgment in his favor is a contention that Ind. Ann. Stat. § 2-

2524 (e) (Burns' 1968 Repl.), which was in force and effect at the time in question, mandates the granting of summary judgment where the non-moving party fails to produce counter-affidavits. Such contention misconstrues the law of summary judgment in Indiana. The statutory provision in question reads in part as follows:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him." (Emphasis supplied)

In *Kapusta* v. *DePuy* (1968), 249 Ind. 679, 234 N. E. 2d 487, the Supreme Court dispelled the notion inferentially propounded by appellee by construing the words "if appropriate" in the last sentence of subsection (e) of the statute in the light of subsection (c) of that statute, "to still require a finding that there is no genuine issue as to any material fact, *whether or not counter affidavits are filed"*. (Emphasis supplied) Thus, in our view a trial court must ground its determination in summary judgment proceedings upon the standard set out in subsection (c) of Ind. Ann. Stat. § 2-2524, which reads as follows:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

While this court takes cognizance of the great procrastination exhibited in the prosecution of this cause and its incapacitating effect upon the process of justice, we must, under the circumstances nevertheless hold that the trial court erred in finding that there were no genuine issues of material fact. Notwithstanding the probability or improbability of plaintiff-

appellant's success upon trial or upon other proceedings below, we cannot here state as a matter of law that there is no such genuine issue. In so doing, the trial court erred.

Summary judgment procedures are not designed to cure or discipline dilatory litigants. Rigid continuance rules, calls of docket and other trial court procedures *are* so designed and their use is highly recommended in cases such as this.

As earlier noted the original plaintiff-patient is deceased. However, a trial court upon summary judgment motion cannot, nor can we upon appeal, prejudge a plaintiff's ability to sustain his, or in this instance, her burden of proof upon the factual issues. The *existence* of factual issues, however, is quite a different question from that concerning the burden of establishing, as a matter of evidentiary proof, the facts alleged by plaintiff. We are here concerned only with the former question. We cannot prejudge that matter.

We are not unsympathetic or unmindful of the understandable desire on the part of the trial court to dispose of what by reason of delay and inactivity appeared to be a complaint wholly without merit. In this connection, the connotation in defendant's motion for summary judgment is clear—that plaintiff obviously thinks his lawsuit to be without merit; otherwise he and the substituted plaintiff would have prosecuted it with more diligence. The perhaps justifiable termination of this litigation was not, however, appropriately achieved. We believe that there are genuine issues of material fact which appear upon the face of the record and which may include, but are not restricted to: The purpose of initial surgery, i.e., circumcision or relief of severe inflamation; the time of the onset of carcinoma, i.e., before or after treatment by the defendant; whether the initial surgery caused urine to exit other than in the usual manner; whether the method used by the defendant to remove the venereal warts was proper or not; and, the cause of carcinoma, i.e., chemical trauma

occasioned by defendant's treatment for plaintiff's warts, or otherwise.

Accordingly, the decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Lowdermilk, C.J., Carson and Lybrook, JJ., concur.

NOTE.—Reported in 264 N. E. 2d 623.