**F. W. MEANS & COMPANY, Appellant
(Plaintiff Below),**

v.

**Thomas W. CARSTENS, et al. Appellees
(Defendants Below).**

No. 3–181A23.

Court of Appeals of Indiana,
Third District.

Nov. 25, 1981.
Rehearing Denied Jan. 7, 1982.

Christopher Kirages, Dutton, Kappes & Overman, Indianapolis, Robert Parrish, Peters, Terrill, Parish & Larson, Fort Wayne, Sidney L. Rosenfeld, pro hac vice, Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Ltd., Chicago, for appellant.

Edward L. Murphy, Jr., William P. Fagan, Richard P. Samek, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellees.

STATON, Judge.

F. W. Means & Company (Means) instituted an action against its former employee, Thomas J. Carstens, and Carstens' new employer, Coverall Rental Service, Inc. (Coverall), based upon issues involving breach of a restrictive employment contract, inducement of that breach, and the misuse of Means' business confidential information. The trial court granted summary judgment in favor of the defendants and Means raises the following issues for our review: [1]

(1) Whether the responses to requests for admission established Means had suffered no actual damages;

(2) Whether Means was entitled to injunctive relief after the term of the restrictive employment contract had expired; and,

(3) Whether the trial court erred in denying Means leave to amend its complaint.

We reverse the summary judgment upon the first issue.

Means is in the business of supplying and cleaning uniforms, towels and linens for institutional, industrial and commercial customers. Coverall is in the same business and competes with Means in portions of Indiana. Carstens was an employee of Means for approximately twenty-eight years during which time he held several key management positions. In 1975, Carstens entered a new employment contract with Means. The contract provided that during his employment with Means, and for a period of two years thereafter, Carstens would

---

[1]. Carstens and Coverall attempt to raise an additional issue by alleging the restrictive employment contract between Means and Carstens was unenforceable as a matter of law. In granting summary judgment, that issue was not before the trial court and is not, therefore, an appropriate issue for this Court to address. *See, Waterfield Mortgage Company v. O'Connor* (1977), 172 Ind.App. 673, 361 N.E.2d 924.

not enter into competition with Means, nor divulge any of the confidential information of Means.[2]

In 1978, Carstens quit his employment with Means and entered into employment with Coverall to fill a key management position. Means filed a complaint against Carstens and Coverall alleging breach of contract and inducement thereof. In addition to damages, Means sought an injunction to prevent Carstens' employment with Coverall for the two year period following his termination of employment with Means. More than two years after the complaint was filed, the trial court granted summary judgment in favor of the defendants:

"[T]he Court finds (1) That the contract between Plaintiff and Defendant, Carstens, contains a restrictive covenant for period of 2 years which period began upon his termination of employment on 3/12/78 and expired on 3/12/80; (2) That Plaintiff requested in its complaint a temporary injunction upon filing this case on 6/14/78; (3) That a temporary injunction hearing was set on 7/17/78; (4) That by consent of all parties the temporary injunction hearing was continued; (5) That Plaintiff has never requested a re-setting or hearing on said temporary injunction; (6) That by the admissions of Plaintiff, Plaintiff has not sustained any actual damage; (7) That punitive damages are not recoverable in the absence of

actual damages, therefore Defendants are entitled to judgment as matter of law. Defendants granted summary judgment that Plaintiff take nothing by its complaint against the Defendants. Plaintiff's motion for leave to amend complaint is hereby denied."

Thus, the trial court found Means not entitled to injunctive relief as a matter of law and that Means had "admitted" it was without actual damages. Thereafter, the trial court denied Means leave to amend its complaint.

### I.

### Requests for Admission

■ The defendants filed requests for Means to "admit for the purpose of the pending litigation only the truth to the . . . allegations." Each allegation, in essence, requested Means to admit it was "not aware of any facts which indicate . . ."[3] that the defendants had wrongfully used the confidential information of Means. Means so admitted "qualified" by the further statements that it was without "information or knowledge" as to whether such alleged facts were true.[4] Upon motion the trial court ruled that these were not good faith answers and ordered the requests be deemed admitted without qualification.[5] The court then ruled these "admissions" established that Means had suffered no actual damages. That ruling was in error.

2. We use the terminology "confidential information" in reference to those areas covered by the terms of the contract which included customer lists, routes, customer requirements, trade secrets and information pertaining to the methods, policies, procedures and manner of operation of the Means' business.

3. Each request for admission was introduced by this identical phrase. Thereafter, each varied only in its reference to the type of confidential information or the party involved.

4. The term "qualified" as used by Means in its responses was, we believe, a misnomer. TR. 36(A) requires a party to use "good faith" when it qualifies an admission. Here, Means admitted it was not "aware" of certain facts. Means then "qualified" this admission by stating it had no "information or knowledge" of those same facts. The Random House Dictionary (1969), defines aware in part as "having

knowledge." Therefore, Means actually was enlarging upon its admission that it was not "aware" when it stated it did not have "information or knowledge" of the same facts.

5. If the court upon motion decides that an answer does not comply with the requirements of TR. 36(A), the court

"may order either [1] that the matter is admitted or [2] that an amended answer be served . . . [or, (3), that] in lieu of these orders, determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial."

Whether the trial court was correct in its finding that Means did not use good faith in its responses is not relevant to the resolution of this issue. We also deem the responses by Means to be admissions without qualification. *See*, footnote 4, *supra*.

■ The fact that Means admitted it was not "aware" of a "fact" which might be essential to its cause of action at trial can not be equated with an admission that the "fact" did not exist. More compelling, the admission that Means was not "aware" of facts indicating defendants' wrongful acts can not be equated with an admission that Means had not suffered actual damages. The error here addressed arose, we believe, out of a lack of understanding of the function of two of the Ind. Rules of Procedure, Trial Rules 36 and 56.

■ The *essential function* of a TR. 36 request for admission is to establish a "fact." 3 Harvey, Indiana Practice—Rules of Procedure Annotated, 36.1 (1970); 4A Moore's Federal Practice, ¶¶ 36.01 et seq. (1981); 8 Wright & Miller, Federal Practice and Procedure, §§ 2251 et seq. (1970). Generally, the fact to be established is the genuineness of a document or the truth of the statement propounded in the request. The request for admission is not a mechanism and used to discover a "fact."

"Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes his opponent to concede their genuineness. If a party desires to discover what the facts are, he should resort to other discovery rules rather than Rule 36."

8 Wright & Miller, *supra*, at § 2253.

■ The *essential characteristic* of this "non-discovery" mechanism is that the request for admission is a "close-ended" inquiry.[6] That is, the request for admission requires by either admission or denial, an answer which is unambiguous, unequivocal and without the evasion often characteristic of answers to depositions and interrogatories. However, this "close-ended" characteristic places a burden upon the requesting party as well as the answering party.

■ It is true the answering party must admit or deny the statement of fact propounded in the request,[7] and if the an-

6. Professor Finman examined the "open-ended" *versus* "close-ended" characteristics of interrogatories and depositions *versus* requests for admissions, respectively, in the obtaining of admissions:

"[S]ince admissions typically cause a loss of tactical advantage, litigants are not always willing to answer candidly. Consequently, it is important to consider how effectively the deposition-interrogatory machinery, on the one hand, and admissions procedure on the other encourage candor.

"In this respect the distinction between open-ended and closed-ended inquiries is important. An open-ended inquiry is one in which the answering party has full control over the formulation of his reply, while in a closed-ended inquiry the person asking the question formulates and limits the possible answers to it. Depositions and interrogatories are open-ended. Thus if these devices are used in seeking admissions, the answering party, even though he knows a contention is true, can frame a reply which states his position in an ambiguous, equivocal manner. If he does—if there is any ambiguity—the inquiring litigant must interpret the answer as a denial. His trial preparation will be based on this interpretation, and he cannot assume that preparation is unnecessary unless a contention has been unequivocally conceded. Therefore, if the mechanism used to ask for an admission is a deposition or

interrogatory, the attempt will fail if the responding litigant is willing to be evasive. Evasion would not suffice if a request to admit were used. Here the inquiry is closed-ended. The only possible responses are (a) an admission, (b) a denial or (c) a statement that the contention cannot honestly be either admitted or denied. If the contention is known to be true, an admission can be avoided only if the answering litigant is willing to submit an answer which is patently false, not merely evasive."

Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale 371, 378–79 (1962) (footnotes omitted).

7. In the present case, we are only concerned with whether a "fact" is established, and thus, whether admitted or denied. However, TR. 36(A) does allow the answering party two other choices by providing for objections to the requests, *see* footnote 10, *infra*, or for qualified responses:

"The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder...."

swering party admits to the statement of fact, TR. 36(B) provides that: "Any matter admitted under this rule is conclusively established...."[8] *See, Bolen v. Mid-Continent Refrigerator Co.* (1980), Ind.App., 411 N.E.2d 1255. Therefore, once admitted, the TR. 36 "fact" is settled for all purposes of that cause of action. The need to prove such "fact" at trial is eliminated. 3 Harvey, *supra*, at 36.1; 4A Moore's, *supra*, at ¶ 36.08; 8 Wright & Miller, *supra*, at §§ 2253, 2264. Thus, TR. 36 squarely places a burden upon the answering party to establish a "fact" for the requesting party's cause of action.[9] This burden is unfairly increased when the request for admission propounds a statement of fact which lacks clarity, is ambiguous, or which otherwise might mislead the answering party.[10]

■ What may at times be overlooked is the burden upon the party requesting the admission which directly corresponds to the burden placed upon the answering party. The burden upon the requesting party is to artfully draft the statement of fact contained in the request for admission. That statement must be precise, unambiguous and in no way mislead the answering party.[11] The drafting of the statement of fact is controlled exclusively by the requesting party. Therefore, fairness demands that any error arising out of inartful drafting be borne by the requesting party.

■ We believe the defendants did not fairly meet their burden in drafting the requests for admission. The complaint alleged the wrongful use by defendants of Means' confidential information. The defendants requested Means to admit it was not "aware" of facts indicating such wrongful use. Means did no more in its response than directly answer that request and admit a lack of knowledge of such information. This was no more than a candid admission that at a date nearly two years after it had filed its complaint Means was decidedly ill-prepared upon an essential issue to its pleaded cause of action.

■ The defendants did not request an admission that there was no wrongful use of the information nor that Means had suffered no actual damages. These requests and admissions established no such "facts." The "open-ended" requests propounded by the defendants would have been more properly pursued under the traditional discovery mechanisms of depositions and interrogatories.

We sympathize with the trial court in the present cause of action. That court was faced with protracted and burdensome pretrial proceedings. These proceedings included a plethora of motions with lengthy supporting and opposing briefs, with numerous hearing regarding claims, counterclaims, amended claims and counter-claims,

**8.** TR. 36(B) continues:
"unless the court on motion permits withdrawal or amendment of the admission...."

**9.** This "burden" is not an unjust one. As noted in 8 Wright & Miller, *supra*, at § 2252, the request for admission is used
"to define and limit the matters in controversy between the parties.
\* \* \* \* \* \*
"The rule is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." (footnotes omitted)

**10.** TR. 36(A) specifically provides for objection to requests for admission by the answering party: "If objection is made, the reason therefor shall be stated." In his learned work on procedure, Professor Harvey notes:

"An objectionable request is not properly attacked by a motion to strike, to dismiss, or to suppress. The party served must respond to the request and serve admissions or denials of all matters not deemed objectionable; and, as to objectionable matters, he must serve written objections. Such objections must be made within the time designated for the serving of answer, which time shall be not less than thirty days after service unless the court permits a shorter time."
3 Harvey, *supra*, at 36.3. Defective requests for admission are clearly objectionable and answers thereto can not be required. 8 Wright & Miller, *supra*, at § 2262.

**11.** *See generally,* 2B Bender's Federal Practice Forms, Rule 36, Form No. 3054 et seq. (1980), 8 Federal Procedural Forms § 23.401 et seq. (1976).

discovery orders and protective orders to limit discovery, and summary judgments. Then, nearly two years after the complaint was filed which alleged wrongful use of confidential information, Means admitted it was "not aware of any fact indicating . . ." such wrongful use. However sympathetic,[12] this Court must keep ever present before it the proper role of the summary judgment proceedings under TR. 56.

■ The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid in eliminating undue burdens upon litigants and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized. *Bassett v. Glock* (1977), Ind.App., 368 N.E.2d 18.

■ The summary judgment procedure is an application of the law to the facts when no factual dispute exists. The party seeking the summary judgment, therefore, has the burden to establish that there is no genuine issue as to any material fact. And any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181.

■ A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston* (1980), Ind.App., 402 N.E.2d 23. The factual issue is genuine if it can not be foreclosed by reference to undisputed facts. That is, a factual issue is genuine if those matters properly considered under TR. 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing* (1979), Ind. App., 391 N.E.2d 629.

■ Although TR. 56 permits the introduction of affidavits, depositions, admissions, interrogatories and testimony to aid the court in the resolution of the motion for summary judgment, the procedure involved is not a summary trial. *Bassett v. Glock, supra.* In determining whether there is a genuine issue of material fact, the court considers those facts set forth in the nonmoving party's affidavits as true, and liberally construes the products of discovery in favor of the same party. And finally, all pleadings, evidence, and inferences therefrom are viewed in the light most favorable to the non-moving party. *Poxon v. General Motors Acceptance Corp., supra.* In reviewing a grant of summary judgment, this Court uses the same standard applicable to the trial court. *Richards v. Goerg Boat & Motors, Inc.* (1979), Ind.App., 384 N.E.2d 1084.

■ The defendants and the trial court placed great emphasis upon the "fact" established by Means' admission that it was unaware of wrongful use of its confidential information. The only "fact" established, however, was that Means was unaware of a fact at a date prior to trial which might be essential to its cause at trial.[13] We remind the defendants and the trial court that the mere surmise of what evidence the plaintiff may present at trial, or that the plaintiff

---

12. As once noted by Judge Sullivan under analogous circumstances:

"While this court takes cognizance of the great procrastination exhibited in the prosecution of this cause and its incapacitating effect upon the process of justice, we must, under the circumstances nevertheless hold that the trial court erred in finding that there were no genuine issues of material fact. Notwithstanding the probability or improbability of plaintiff-appellant's success upon trial or upon other proceedings below, we cannot here state as a matter of law that there is no such genuine issue. In so doing, the trial court erred."
*McNabb v. Mason* (1970), 148 Ind.App. 233, 240–41, 264 N.E.2d 623, 627.

13. The establishing of this "fact" under the defendants' requests for admission puts in mind the following stanza from Robert Southey's poem, *The Battle of Blenheim*:

"But what good came of it at last?
Quoth little Peterkin,
Why, that I cannot tell, said he,
But 'twas a famous victory."

will have difficulty proving a fact, or that plaintiff's recovery is improbable are not proper bases upon which to grant summary judgment. *Randolph v. Wolff* (1978), Ind. App., 374 N.E.2d 533; *Bassett v. Glock, supra; McNabb v. Mason* (1970), 148 Ind. App. 233, 264 N.E.2d 623.

■ Under the above prescribed standard of review, we find the record clearly establishes that a genuine issue of the material fact of damages exists.[14] Summary judgment, therefore, was erroneously granted and we reverse. We address the following two issues because both are likely to be brought back before the trial court in further proceedings.

## II.

### Injunctive Relief

The employment contract attempted to restrict Carstens' employment for two years following the termination of his employment with Means. Carstens quit his employment with Means on May 12, 1978 and thereafter entered into employment with Coverall. Means filed a complaint on June 14, 1978 seeking in part an injunction to prevent Carstens' further employment with Coverall. On that same day the trial court scheduled a hearing regarding Means' request for the injunction. However, Means in agreement with defendants stipulated to a continuance of that hearing.

Over the next two year period Means made no further effort to obtain injunctive relief.[15] On July 18, 1980, the trial court granted summary judgment for the defendants based in part upon the fact the two year period of the restrictive employment covenant had expired. Means argues that the remedy of injunction could be granted beyond the contractual terms to effect equitable relief. We agree in principle that in order to work justice courts of equity may well sculpture unique forms of relief. *See, e. g., McKain v. Rigsby* (1968), 250 Ind. 438, 237 N.E.2d 99 (temporary injunction to prevent conveyance of assets in fraud of creditors). There are three distinct grounds in the present case, however, upon which we approve the trial court's refusal to perform such handiwork.

■ First, Means failed to diligently pursue the injunction. If a party deems injunction necessary, the Indiana Rules of Procedure provide a method whereby a preliminary injunction may be sought, and if equity deems just, speedily obtained. *See*, TR. 65. The employer may obtain an injunction to prevent a former employee from breaching the terms of a valid restrictive employment contract. The employer need only establish a breach of the contract terms which has an adverse effect upon the employer's business:[16] The employer need

14. The record is without conflict that Carstens held a key management position with Means, quit his employment with Means and immediately took a key management position with Coverall. If in fact Means and Coverall are in direct competition, a fact clearly at issue in the record before us, then on that fact alone there is a reasonable inference Means suffered damages by Carstens' breach of contract. See cases cited in this Opinion, Part II, *infra*. Such inference is sufficient to defeat the defendants' motion for summary judgment. In addition, we note Means pled a cause of action based upon wrongful interference with contract relationships (see this Opinion, Part III, *infra*). *See, e. g., Claise v. Bernardi* (1980), Ind.App., 413 N.E.2d 609; *Monarch Industrial Towel and Uniform Rental, Inc. v. Model Coverall Service, Inc.* (1978), Ind.App., 381 N.E.2d 1098. The trial court only found no actual damages regarding the issue of wrongful use of Means' confidential information. Thus, apparently, there is another genuine issue of the material fact of damages.

15. On July 11, 1980, more than two years after the original complaint was filed, Means sought by motion to amend its complaint. In part, the amended complaint sought a two year injunction against the defendants to be imposed as of the date of final judgment.

16. In *Slisz v. Munzenreider Corp.* (1980), Ind. App., 411 N.E.2d 700, 704, the Court noted:

"[R]estraints on competition between an employer and his former employee ... are not favored by the law, but will nevertheless be enforced where 1) the restraint is reasonably necessary to protect the employer's business; 2) it is not unreasonably restrictive of the employee, and 3) the covenant is not antagonistic to the general public interest...."

\*　\*　\*　\*　\*　\*

not establish monetary damages.[17] *Peters v. Davidson, Inc.* (1977), 172 Ind.App. 39, 359 N.E.2d 556; *Welcome Wagon Inc. v. Haschert* (1955), 125 Ind.App. 503, 127 N.E.2d 103.

■ Although initially petitioning for an injunction and hearing thereon, Means agreed to a continuance and thereafter made no further attempt to obtain this appropriate remedy. On the one hand, Means offers no justification for his lack of action and we find none in the record. On the other hand, Carstens has been in the employ of Coverall, as of this date, for a period exceeding three years. Means seeks a court of equity to impose a two year injunction at some still further future date to that employment relationship.

We find the following statement an appropriate resolution to this issue:

"In the case at bar we are concerned with what would more properly be termed laches, that is the neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the adverse party and thus operating as a bar in a court of equity. *Haas v. Holder*, (1941) 218 Ind. 263, 32 N.E.2d 590."

"In applying such test, many courts have held an employer must demonstrate some 'special facts' giving his former employee a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant, and those 'special facts' may include (but are not limited to) such things as trade secrets known by the employee, the employee's 'unique' services, confidential information (such as customer lists) known to him, or the existence of a confidential relationship."

17. In *Welcome Wagon, Inc. v. Haschert, supra,* 125 Ind.App. at 507, 127 N.E.2d at 106, the Court stated:

"The fact that the injury done by the breach of a restrictive covenant in a contract of employment cannot be measured in dollars and cents and compensated through an action at law, is a prime reason for enjoining its

*Frazier v. State* (1975), 263 Ind. 614, 616–17, 335 N.E.2d 623, 624. We find Means to have waived any right to injunctive relief to which it may have been entitled. Equity aids the diligent, not those who have long slept upon their rights. *See, e. g., Ryason v. Dunten* (1905), 164 Ind. 85, 73 N.E. 74; *Sigsbee v. Swathwood* (1981), Ind.App., 419 N.E.2d 789.

■ Secondly, because the injunction is an extraordinary equitable remedy it is granted with great caution, only when the necessity and reason therefor are clearly established, and only where the law does not provide full redress. *McKain v. Rigsby, supra; Huegel v. Townsley* (1938), 213 Ind. 339, 12 N.E.2d 761. It follows therefrom that the scope of the injunction should never be more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted. *Lawrence v. Cain* (1969), 144 Ind.App. 210, 245 N.E.2d 663.

The scope of injunctions enforcing restrictive employment contracts has not previously been addressed by an Indiana court. In *Lawrence v. Cain, supra,* the Court found that an injunction enforcing the restrictive covenant of a contract controlling competition between the parties should not exceed the terms of the covenant. And in *Bob Layne Contractor, Inc. v. Buennagel* (1973), 158 Ind.App. 43, 301 N.E.2d 671, the

continuing breach. In our opinion irreparable injury need not be shown where, as here, the services of the employee have been of such character that she gained knowledge of her employer's special and particular business methods and the very purpose of the breach is to capitalize upon the use of such methods for her own benefit."

And similarly, in *Peters v. Davidson, supra,* 172 Ind.App. at 45, 359 N.E.2d at 561, the Court stated:

"In cases such as this, irreparable injury can not always be measured in dollars and cents. We feel that a clear action in equity for injunctive relief exists where, as here, an individual capitalizes upon his prior training and knowledge in violation of a reasonable covenant not to compete to the obvious detriment of his former employer."

Court held that the scope of an injunction must be limited to the terms established in the land's restrictive covenants.

Other jurisdictions have addressed the issue of granting an injunction after the term of the restrictive employment contract has expired. Generally, those jurisdictions have held the issue moot because injunctive relief may be granted only co-extensive to the terms of the contract. *Wagner v. A & B Personnel Systems, LTD.* (1970), Colo. App., 473 P.2d 179; *Gulick v. A. Robert Strawn & Associates, Inc.* (1970), Colo.App., 477 P.2d 489; *Wedin v. Atherholt* (1941), 298 Mich. 142, 298 N.W. 483; *Hayes v. Altman* (1970), 438 Pa. 451, 266 A.2d 269; *Elcor Chemical Corp. v. Agri-Sul, Inc.* (1973), Tex.Civ.App., 494 S.W.2d 204; *Abalene Pest Control Service, Inc. v. Hall* (1966), 126 Vt. 1, 220 A.2d 717. *But see, American Eutectic Welding Alloys Sales Co. v. Rodriguez* (1st Cir. 1973), 480 F.2d 223; *Premier Indus. Corp. v. Texas Indus. Fastener Co.* (5th Cir. 1971), 450 F.2d 444.

■ We follow the precedent of Indiana courts in analogous areas of law, as well as the result mandated in other jurisdictions, upon this issue. Where there are no special or extenuating circumstances,[18] injunctive relief beyond the terms of the restrictive covenant of an employment contract is not a proper remedy.

■ And thirdly, we are ever mindful of the public policies of this State. Employment contracts containing covenants not to compete are in restraint of trade and therefore not favored in law. Such covenants will be enforced if the restriction is necessary to protect the business interests of the employer, is not unreasonably restrictive upon the employee, and is not in contravention of public policy. *Grand Union Tea Co. v. Walker* (1935), 208 Ind. 245, 195 N.E. 277; *Slisz v. Munzenreider Corp.* (1980), Ind.App., 411 N.E.2d 700; *Water-field Mortgage Co. v. O'Connor* (1977), 172 Ind.App. 673, 361 N.E.2d 924. Although the individual covenant or a portion thereof may be upheld, the courts closely scrutinize and limit the scope of these restraints upon the individual's choice of employment, *See, Welcome Wagon, Inc. v. Haschert, supra; Waterfield Mortgage Co. v. O'Connor, supra.*

■ Rather than limit, Means seeks to expand the restrictions of the employment contract far beyond its original terms. Under the circumstances of this case, we find such result would be in clear violation of public policy and contrary to the well-established law of this State. For all of the above reasons we conclude that the trial court did not err in finding that injunctive relief was not a proper remedy.

### III.

### Amendment of Complaint

Means also alleged the trial court erred in denying it leave to amend the complaint. The grant or denial of leave to amend a complaint is within the sound discretion of the trial court and is reviewable by this Court only for an abuse thereof. *Hargis v. United Farm Bureau Mutual Ins. Co.* (1979), Ind.App., 388 N.E.2d 1175; *B & D Corp. v. Anderson, Clayton & Co.* (1979), Ind.App., 387 N.E.2d 476. There was no such abuse in the present case.

■ Those portions of the original complaint pertinent to this issue alleged the employment contract with Means placed certain restrictions upon Carstens during the two-year period following the termination of his employment. Those restrictions included that Carstens would not solicit or divert customers from Means, would not engage in a competing business with Means, and that:

---

**18.** Means relies heavily upon *American Eutectic Welding Alloys Sales Co. v. Rodriguez, supra,* and *Premier Indus. Corp. v. Texas Indus. Fastner Co., supra,* to support its position. In both cases the appellate court allowed injunctive relief beyond the term of the restrictive employment contracts due to unreasonable delays caused by the district courts' actions. In the present case, however, the unreasonable delay was caused by Means' inaction. These cases do not support Means' contention.

"[Carstens] agrees not to personally use either as an individual, employee, owner, partner, agent, officer, director, or in any other manner whatsoever, directly or indirectly or in combination with others, any of the knowledge or information obtained as a result of employment with F. W. Means & Company for a period of two (2) years after termination of his employment from F. W. Means & Company...."

The complaint further alleged that through great time, effort and expenditures, Means had developed valuable confidential information and that:

"Relying on CARSTENS' position of trust and confidence and based on CARSTENS' duties and position ..., MEANS has furnished to CARSTENS during the course of his employment [such confidential information]."

Means then alleged Carstens was in breach of contract, and that:

"MEANS' business will be damaged when said confidential information is necessarily used by CARSTENS while he is engaged in a competing business as President of COVER–ALL."

Under a separate count, Means alleged in the original complaint that Coverall knew of Carstens' employment contract and that Coverall induced the original breach and the continuing breach thereof. The relief sought by Means, pertinent to this issue, was a two year injunction as of the date Carstens quit his employment with Means.

In its amended complaint Means alleged, with some embellishments, those facts stated in the original complaint. Means then further alleged that Carstens:

"In his capacity ... [with] MEANS, ... held a position of trust and confidence and was entrusted with confidential information ... [and that he had] breached his fiduciary obligation to MEANS by necessarily using and disclosing such confidential information in direct competition with MEANS in his capacity ... [with] Coverall."

The amended complaint further alleged that Coverall had "induced and caused

CARSTENS to breach his fiduciary obligation to MEANS ...." The "amended" relief sought by Means was a two-year injunction as of the date judgment was rendered in favor of Means. Such relief must be denied Means and need not, therefore, be further discussed. See this Opinion, Part II, *supra*.

■ Under our Ind. Rules of Procedure, TR. 8(A), the complaint need only contain:

"(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and

"(2) a demand for the relief to which he deems himself entitled."

Accurately described as "notice pleading," this rule requires only that the complaint state the operative facts involved in the cause of action. *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604; *B & D Corp. v. Anderson, Clayton & Co., supra*. The complaint need not state the legal theory upon which recovery is sought, nor even all of the elements of the cause of action. *State v. Rankin, supra; B & D Corp. v. Anderson, Clayton & Co., supra*.

■ The essence of both the original and the amended complaint was a statement of *facts* alleging the defendants were wrongfully using the confidential information of Means. Whether Means' cause of action would lie in the breach of a fiduciary duty or a contractual duty, the facts pled in the original complaint were sufficient to put the defendants on notice of the issues involved. Although two years had passed since the original complaint was filed, the cause had not been set for trial, nor had the issues been delineated in a pretrial conference. See, TR. 16(J); *Marotta v. Iroquois Realty Co.* (1980), Ind.App., 412 N.E.2d 797; *City of Hammond, Lake County v. Drangmeister* (1977), 173 Ind.App. 476, 364 N.E.2d 157.

Therefore, the issues which might be addressed at trial were not yet "closed." The amendments to the original complaint were not necessary for Means to pursue the "amended" causes pled. Because the amendments were not necessary, the trial

court did not abuse its discretion in denying Means leave to amend its complaint.

We reverse and remand for further proceedings consistent with this Opinion.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I concur in the result reached. The restrictive covenant in effect required two distinct things of Carstens: that he not engage in competition and that he not divulge confidential information. If the covenant was valid, Means was entitled to actual damages for its breach. The requested admissions dealt only with Carstens' potential disclosure of confidential information, Means' Management Information System and development of competition strategies. Thus, even if the admissions be taken as absolute, they were insufficient to preclude the question of whether Means suffered any actual damage from breach of the covenant.