James WELDY, et al., Appellants–Plaintiffs,

v.

Mary Elizabeth KLINE, Personal Representative of the Estate of George E. Kline, Deceased, Appellee–Defendant.

No. 50A03–9407–CV–250.

Court of Appeals of Indiana.

June 26, 1995.

Transfer Denied Oct. 19, 1995.

Robert D. Lee, William T. Webb, Hardig, Lee & Groves, South Bend, for appellant, James Weldy.

Charles Gregory Read, Vissing, Read, Mosley, Miller, Grayson & Carmichael, Ronald L. Davis, Jeffersonville, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant James Weldy brings an interlocutory appeal from the denial of his Ind. Trial Rule 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction in an action for wrongful death brought by appellee-plaintiff Mary Elizabeth Kline, personal representative of the Estate of George E. Kline, deceased.

The facts relevant to appeal were summarized previously by this Court in *Weldy v. Kline* (1993), Ind.App., 616 N.E.2d 398, 400, and are as follows:

"[O]n August 27, 1989, M.P.I., Inc. (MPI) held a party for employees who worked at its Goshen, Indiana, Holiday Inn. Defendant James E. Weldy (Weldy) and decedent George E. Kline (Kline) were both employed by MPI at the time of the party and worked together in the kitchen at the Holiday Inn. MPI sponsored the party for those who worked at the Inn in order to improve employee morale, generate good will among the employees, and otherwise benefit Holiday Inn. The party included a cook-out and some planned activities, including a tug-of-war game which took place over the swimming pool. MPI also supplied food, drink, and a keg of beer.

During the course of the party many of the party-goers were caught and thrown into the pool. At one point in the evening Weldy and a non-employee guest, Charles Myers, pursued Kline with the intent of throwing him into the pool. Their first attempt was unsuccessful. Soon after, however, Weldy and Myers apprehended Kline who, after removing his shoes and watch, allowed himself to be thrown into the pool. After Kline was thrown in, Weldy and Myers were also helped into the pool by two other party-goers. Weldy and Myers immediately got out of the pool in pursuit of those who had pushed them in. Kline, however, did not get out. His body

was found a little less than an hour later on the bottom of the pool. He had drowned.

Kline's estate subsequently filed suit against several parties, including Weldy, for wrongful death. On April 13, 1991, Weldy filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, a motion for summary judgment. The trial court treated this motion as a summary judgment and denied it on June 24, 1992. On October 8, 1992 a similar motion was also denied. . . ."

Thereafter, Weldy sought an interlocutory appeal from the trial court's ruling. *Id.* On appeal, Weldy argued the trial court lacked subject-matter jurisdiction to hear the cause as the Indiana Worker's Compensation Act, *see* IND.CODE § 22–3–2–6 (1988 Ed.), had exclusive jurisdiction over the matter. This Court held *inter alia* that before an injury will be considered to arise out of employment, the injured employee must be an innocent victim of horseplay; active participation in horseplay is an intervening cause which precludes coverage within the parameters of IND.CODE § 22–3–2–6. *Id.* However, the cause was remanded to the trial court with instructions to determine whether or not Kline actively participated in horseplay.

Upon remand, on November 1, 1993, Weldy filed another motion to dismiss based upon unanswered requests for admission which were deemed admitted by the trial court on June 24, 1992, due to Kline's failure to answer them. The pertinent admissions were:

"15. George E. Kline died as a result of his willing and active involvement in horseplay.

16. George E. Kline died as a result of his unwilling involvement in horseplay.

17. George E. Kline died as a result of his being an innocent victim of horseplay."

The trial court specifically found these admissions to be conflicting and looked to the deposition testimony of Weldy and Myers to determine the issue. Upon reviewing the testimony, the trial court found Kline to be an active participant in horseplay. Hence,

Weldy's motion to dismiss was denied. This interlocutory appeal ensued.

On appeal, Weldy raises one consolidated issue for our review: whether the trial court erred in denying his T.R. 12(B) motion to dismiss.

To support his contention that the trial court improperly denied his motion to dismiss, Weldy makes various arguments regarding the burdens placed upon parties to an Ind. Trial Rule 36 request for admission. More specifically, citing *Ind. Const. Serv. v. Amoco Oil Co.* (1989), Ind.App., 533 N.E.2d 1300 (requesting party not bound by admission under T.R. 36 where requesting party mistakenly sought admission from admitting party as to matter detrimental to requesting party's case) and *GMC v. Aetna Cas. & Sur. Co.* (1991), Ind., 573 N.E.2d 885 (request for admission does not constitute admission by requesting party), Weldy claims that although the admissions are directly contradictory to one another, T.R. 36 allows him to choose which one to use to support his motion to dismiss because under the rule, the requesting party is not bound by the admission.

■ A review of the record reveals that Weldy's requests for admissions were filed in the trial court on May 28, 1992, and deemed admitted on June 24, 1992. Weldy relied upon them to support his motion to dismiss of August 7, 1992, from which he initiated his prior appeal. Thus, as Kline points out, the requests and their impact on this dispute were available for our review at that time. Despite the existence of the admissions, we found the issue of whether Kline was an innocent victim or an active participant in horseplay to be left unresolved. *Weldy*, 616 N.E.2d at 406. By necessary implication from our holding and our explicit instruction directing the trial court to determine the issue on remand, the contradictory admissions were insufficient to conclusively establish the fact that Kline was an innocent victim of horseplay as Weldy now contends. *See Riggs v. Burell* (1993), Ind., 619 N.E.2d 562, 564 (law of case is restriction which precludes re-examination of issues on remand and subsequent appeal which were ei-

**110**

ther expressly or by necessary implication settled as matter of law on prior review). Inasmuch as the trial court merely complied with our instructions and reviewed the deposition testimony to resolve the issue, the trial court did not err.

■ Notwithstanding this, Weldy's argument regarding use of Kline's admissions is without merit. Weldy misunderstands the purpose and proper use of requests for admissions in the trial process. The purpose of an admission is not to "discover" a fact but rather to conclusively "establish" a fact. *F.W. Means & Co. v. Carstens* (1981), Ind. App., 428 N.E.2d 251, 256. In line with this reasoning, the *F.W. Means* Court stated,

> "The *essential characteristic* of this 'non-discovery' mechanism is that the request for admission is a 'close-ended' inquiry. That is, the request for admission requires either by admission or denial, an answer which is *unambiguous, unequivocal and without the evasion often characteristic of answers to depositions and interrogatories....*" (Emphasis added.)

Because the purpose of T.R. 36 is to *conclusively* establish a fact, as requesting party, Weldy also bears the burden of "artfully draft[ing] the statement of fact contained in the request for admission" in such a manner which is precise, unambiguous and not misleading to the answering party. *F.W. Means*, 428 N.E.2d at 257. Properly used in this manner, requests for admissions streamline the focus of pre-trial investigation and discovery and eliminate the need for unnecessary evidence at trial. *GMC*, 573 N.E.2d at 888. However, T.R. 36 does not contemplate their use as Weldy attempted here. To permit a requesting party to set forth directly contradictory requests for admissions, and then to choose his fact from the answers obtained would improperly allow such party to use T.R. 36 as a tool for both "discovering" and "establishing" a fact, a dual purpose for which the rule was not intended.

■ Weldy next contends that notwithstanding the admissions, the evidence does not support the trial court's finding that Kline was an active participant in horseplay. However, the record reveals that many people were involved in the horseplay and that others were thrown into the pool on the night in question. On several occasions prior to the fatal incident, Kline ran away from and evaded the efforts of Weldy and Myers to throw him into the pool. Despite doing so, however, Kline consistently returned to the pool where he knew the horseplay was occurring and where he knew people were being thrown into the pool. Additionally, before being thrown into the pool, Kline voluntarily took off his watch and took off his shoes or allowed his shoes to be taken off by a bystander. This evidence supports the trial court's ultimate conclusion that Kline's "continual return to the area and final conduct of willingly walking to the edge of the pool and removing certain items from his person" amounted to his active participation in horseplay. There being no error in the denial of Weldy's motion to dismiss, the decision of the trial court is affirmed.

Affirmed.

GARRARD and BAKER, JJ., concur.